STATE OF WEST VIRGINIA *ex rel.* PATRICK C. GRANEY, *etc.*

*v.*

EDGAR B. SIMS, *Auditor, etc.*

(No. 11023)

and

STATE OF WEST VIRGINIA *ex rel.* MARTHA FORD, *etc.*

*v.*

EDGAR B. SIMS, *Auditor, etc.*

(No. 11024)

Submitted November 18, 1958. Decided December 2, 1958.

*Chas. E. Mahan, Mahan, White, Higgins & Graney, W. Victor Ross*, for relators.

*W. W. Barron*, Attorney General, *Giles D. H. Snyder*, Assistant Attorney General, for respondents.

BROWNING, JUDGE:

The petitioners, in these original proceedings in mandamus, seek writs commanding the respondent, Edgar B. Sims, Auditor, to issue warrants for the payment in full of their salaries for the month of October, 1958. Patrick C. Graney is the State Road Commissioner, a public officer of this State whose salary is fixed by statute, and Martha Ford is an employee of the Department of Finance and Administration of West Virginia. These are companion cases and the issues presented will be dealt with in a single opinion. They will be identified herein as the Graney proceeding or the Ford proceeding when necessary. Graney alleges that a requisition in proper form, based on payrolls attached thereto, was submitted to the respondent on October 23, 1958, and Ford avers that a similar requisition was delivered to respondent on October 28, 1958, which requisitions respondent refused to honor as not properly filed.

The petitions were filed in this Court on November 1, 1958, and on November 7, 1958, a rule was issued against

respondent in each case, returnable November 18, 1958, requiring him to appear and show cause why writs should not issue against him. The respondent appeared on the last mentioned date and filed his answer in each of the proceedings, to which answers petitioners demurred. Counsel for all parties filed briefs and presented oral arguments on that day.

In both petitions it is alleged that for more than fifteen years the respondent has honored requisitions submitted to him prior to the end of the calendar month, and issued warrants dated on the last day of the month for the payment of salaries of officials and employees for such month under the same laws applicable thereto as are now in force. In the Graney petition it is further alleged that petitioner, being a public officer of the State whose salary is fixed by statute, the payment of his monthly salary is not dependent upon the nature or quantum of the services performed by him. Graney states that he has a clear legal right to the payment of his salary for the month of October, 1958, "at the end of said month, as soon as said month has expired and within thirty-one days of his last monthly installment payment on September 30, 1958." Ford alleges a similar right to her salary for the month of October, 1958, "at the end of said month, as soon as said services have been performed, and within thirty-one days of her last monthly installment payment on September 30, 1958." In his answers the respondent does not deny the administrative practice of the past fifteen years as alleged by petitioners, but states that he has refused to honor the requisitions for the month of October, 1958, for the reason that petitioners' salaries were not "justly due" at the time the requisitions were certified, inasmuch as petitioners had not fully performed the services required of them by law to entitle them to their salaries for the entire month of October. He further states that the requisitions were not honored because the petitioners have failed to comply with a rule promulgated by him on August 11, 1958, which he maintains was made pursuant to authority given him by Chapter 67, Acts of the Legislature, Regular Session,

1943, as amended by Chapter 116, Acts of the Legislature, Regular Session, 1945, which appears in Michie's Code of West Virginia, 1955, as Section (13a) of Article 3, Chapter 12. Hereinafter it will be referred to as Section (13a). This act authorized the Auditor of the State of West Virginia to deduct and withhold sums from the salaries of State officials and employees "to purchase United States government bonds and other United States government obligations, or to pay taxes as may be required by an act or acts of the congress of the United States of America." In other words, it provided for the withholding of portions of the salaries of State officials and employees for the purchase by installment payments of United States government securities and for the payment of social security and income taxes. The last paragraph of Section (13a) was not affected by the 1945 Amendment. It reads: "To promote efficiency and economy in making such deductions as provided herein, the auditor is authorized to promulgate rules and regulations and to designate the time for the presentment of the payroll requisitions for state officials and employees and requisitions for other claims against the State: Provided, that all officials and employees shall be paid at least once every thirty-one days. All officials and employees of the State shall comply with the rules and regulations promulgated by the auditor under this section." This, in so far as pertinent, is the rule promulgated on August 11, effective October 1, 1958, by respondent:

> "Payrolls shall not be prepared by any division of the State government for submission to the office of the Department of Finance and Administration *until after the last day of a pay period has expired.* All payrolls should have the following certificate affixed or written on the transmittal sheet in the following language:

> > "I hereby certify that the payroll or payrolls attached hereto were prepared in my office on the _____ day of _____, 19_____.

> "The above certificate should be signed in pen and ink by the head of the division."

This rule of August 11, was preceded by a memorandum, Exhibit B with Respondent's Answer in the Graney proceeding, dated March 28, 1958, which was sent by respondent to all of the departments of the Executive branch of the State government, to which reference is made in the answers of respondent. The comprehensiveness of the rule of August 11, and the reasons for its promulgation necessitates quotation at some length from the memorandum of March 28:

"In order to avoid the necessity of re-deposits, the drafting and submission of supplemental payrolls, corrective monthly payrolls made necessary by reason of death of employees; hiring of new employees; firing of old employees; absence of employees beyond earned time off for sickness, etc.; *the pay day of all state divisions should be changed from the last day of the calendar month until the 15th day of the month following.* Payrolls should not be prepared in any division until after the pay period has expired. The fiscal offices (Budget office, Auditor's office and Treasurer's office) in the Capitol are having difficulty due to the fact that payrolls for a calendar month are prepared by the 18th or 19th day of the month in the payroll office of each division and started through the mill at least ten days in advance of pay day. The time involved is necessary on account of the procedure that must be followed in obtaining payroll checks by pay day.

"The Treasurer's office distributes the checks to all divisions of the State Government either on the day before or on pay day, which is always the last day of the month. When these checks are received by the division a great many changes have taken place in its personnel that require the re-deposit of a number of employees' checks; redeposit of social security tax checks and the re-deposit of withholding tax checks; supplemental payroll is then drafted including such changes that have occurred in the staff or personnel in the division since the day the payroll was originally prepared.

"The volume of this particular type of corrective supplemental payrolls has reached the point where it is a large part of the volume of work handled in the fiscal offices. It is believed that by deferring pay day fifteen days, and, requiring that payrolls are not to be processed by the payroll offices until after the last day of the pay period, that we will entirely eliminate this great mass of superflous transactions. * * *

"* * *.

"8. Upon the receipt of a properly drafted payroll, certified to as required, the Auditor's Office will issue payroll warrants for the month of October and subsequent months in the sequence of their receipt. The Treasurer's Office will do likewise. This will result in a variation in pay day throughout the State Government each month. However, every effort will be made to have pay checks in the payroll department offices by not later than the 15th day of each month." (Italics supplied.)

On October 16, 1958, another memorandum was sent by respondent to all departments of the Executive branch of the State government, a copy of which is filed with the answer as Exhibit C in the Graney proceeding. It reads:

"TO: Payroll or Accounting Division—Each Department or Division of the State Government

"State Auditor Edgar B. Sims today stated that he has always recognized the right of the heads of the various state departments and institutions to set the pay day for their respective employees, and he will honor requisitions providing for a two weeks pay period for all state governmental agencies as long as such requisitions contain the certification as set forth in his recent order that the payroll covered by said requisition is for 'services rendered to the State.'

"This makes a two weeks pay period for all state agencies due at the present time upon

proper presentation of a requisition bearing the certification required by law as the head of any department or institution can now truthfully certify that the 'services have already been rendered to the State.'"

The respondent quoted the provisions of Code, 12-3-13, in his rule or directive of August 11, and urges its pertinency in these proceedings. It reads: "No money shall be drawn from the treasury to pay the salary of any officer or employee before his services have been rendered." However, particularly pertinent to the Graney proceedings are the provisions of Code, 6-7-1: "The salary and allowances of all state officers payable out of the state treasury shall be paid in equal monthly installments at the end of each month."

Although not cited or discussed in briefs of counsel the following provisions of Code, 12-3-10, must be given consideration: "It shall be unlawful for any state officer to issue his requisition on the state auditor in payment of any claim unless an itemized account is filed in the office of the officer issuing the requisition. If the account is for services, it shall show the kind of service, dates *when performed* and names of persons performing the service; if the account is for materials or supplies, it shall show in detail the kind of material or supplies, the quantity, dates of delivery and to whom delivered; * * * ." (Italics supplied.)

The respondent relies upon the language of Section (13a) wherein "the auditor is authorized to promulgate rules and regulations" for authority to promulgate his rule of August 11, relating to the time when the heads of the Executive departments of the State government shall prepare and submit payroll requisitions. It is the contention of petitioners that the authority given the Auditor by this section to promulgate rules is limited to rules pertaining to deductions from the salaries of officials and employees of the State "under this section", and does not empower him to promulgate a rule fixing the time for the submission of payroll requisitions. They

further contend that if this section be construed to give the Auditor such power then the act is invalid as being in contravention of Article VI, Section 30, of the Constitution of this State: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. * * *" The respondent contends that Section (13a) and Code, 6-7-1, are in irreconcilable conflict, therefore, since Section (13a) is the later expression on the subject, the older statute is repealed by implication by the later enactment. The petitioners maintain that they may be reconciled and force should be given to both. These questions will be discussed, but not necessarily in that order.

The title of Chapter 67, Acts of the Legislature, Regular Session, 1943, is in this language: "AN ACT to amend article three, chapter twelve of the code of West Virginia, one thousand nine hundred thirty-one, as last amended, by adding thereto a new section to be designated section thirteen-a, relating to salary deductions allowed by the auditor." This Court is not concerned with whether the title to this bill is sufficient to meet the test of Article VI, Section 30, of the Constitution of this State with regard to the authority given the Auditor to promulgate rules and regulations "To promote efficiency and economy in making such deductions as provided herein." The power of the Auditor to fix the time for submission of payroll requisitions is expressed by the specific language of the act. Therefore, it is unnecessary to determine whether respondent has indirect authority to do that which the plain language of the statute gives him direct authority to do. It provides that: "To promote efficiency and economy in making such deductions as provided herein, the Auditor is authorized to promulgate rules and regulations *and to designate the time for the presentment of the payroll requisitions for state officials and employees and requisitions for other claims against the State:* * * *." (Italics supplied.) The italicized words are clear and unambiguous. Thus the important question is raised as to whether the provision in the act authorizing the Auditor to designate the time for pre-

sentment of payroll requisitions is repugnant to Article VI, Section 30, of the Constitution of this State. The "object" of this act was to empower the Auditor of this State to make deductions from the salaries of officials and employees of this State for certain purposes. The power to supervise the time of the filing of payroll requisitions was only a detail of the object stated in the title. The title of the act was such that it should have provoked a reading of the act by a person interested in its subject matter. That is the test of the sufficiency of a title to a statute. *City of Wheeling, etc.* v. *American Casualty Co.*, 131 W. Va. 584, 48 S. E. 2d. 404; *State ex rel. Dyer* v. *Sims*, 134 W. Va. 278, 58 S. E. 2d. 766. It is the duty of the courts, in considering whether the object of the act is expressed in the title, "to lean in favor of" sustaining the validity of the act, and to declare its validity, unless its unconstitutionality is established, and made manifest and clear beyond all reasonable doubt. *Chesapeake, etc. R. Co.* v. *Patton*, 9 W. Va. 648. "Auxiliary objects" may be included in the act without being expressed in the title. *Casto* v. *Upshur County High School Board*, 94 W. Va. 513, 119 S. E. 470; *City of Wheeling, etc.* v. *American Casualty Co., supra*. The act, in so far as it authorizes the Auditor "to designate the time for the presentment of the payroll requisitions for state officials and employees", is valid. The issue of the validity of the provision relating to "requisitions for other claims against the State" is not before this Court in these proceedings.

"All statutes in pari materia should be read and construed together, as if they formed parts of the same statute and were enacted at the same time, and where there is a discrepancy or disagreement among them such interpretation should be given as that all may, if possible, stand together." 17 M.J., Statutes, §40. Many decisions of this Court are cited in support of this statement. The provisions in Section (13a) "Provided, that all officials and employees shall be paid at least once every thirty-one days.", and Code, 6-7-1, relate to the same subject matter, and are not in substance inconsistent

with each other. Therefore, they are in pari materia. The rule that the repeal of a statute by implication is not favored by the courts, and the presumption is against the intention to repeal where express terms are not used is too elementary for the citation of authority in support of it. We are of the view that both of these statutes and the other provisions of Section (13a), giving the Auditor authority to designate the time for the presentment of a payroll requisition, were intended by the Legislature to operate in harmony, and not in contravention of the general subject matter to which they were directed. Therefore, there is a limitation imposed upon the power of the Auditor to fix the time for the submission to him of payroll requisitions. Not only must officials and employees of the State, who are not compensated by hourly wages, be paid at least once every thirty-one days, they must be paid on or about "the end of each month." Officials, and particularly employees of the State, like persons employed in private industry, have financial obligations that must be met about the first of every month. While the pleadings in these proceedings do not show the number of officials and employees of this State who are compensated for their services by monthly checks, the members of the Legislature are aware of the approximate number each year when it passes the budget bill, and this Court may take judicial notice of all Acts of the Legislature and thereby obtain the same information. That number is such that it is not possible for the fiscal officers of the several departments of the State government to prepare payroll requisitions on the last day of the month, to have them processed by the Department of Finance and Administration, to send them to the Auditor for the issuing of warrants, to deliver the warrants to the Treasurer of the State where they are converted into checks, to send the checks to the proper departments and to deliver them to the payee at the precise end of the month.

Code, 2-2-4, provides that: "In a statute the word 'month' shall mean a calendar month, and the word 'year' a calendar year; * * *." However, in *Phillips* v. *Com-*

*mercial Credit Co.*, 121 W. Va. 234, 3 S. E. 2d. 836, it was held that: "Unless the contrary appears from the context of a statute or contract, wherein reference is made to months, a month is to be deemed a calendar month. * * * " In view of the consummate respect that this Court has for the legislative branch of the government of this State, we ascribe to it the legislative intention to authorize deductions from the salaries of officials and employees of the State by enacting Section (13a) without working a manifest injustice upon the Auditor and the employees of his office, or the person who receives monthly salary checks from the State. By giving the Auditor the authority to designate the time for the presentment of payroll requisitions, it imposed upon him the responsibility of guarding against the violation of the applicable statutory provisions, and the duty of fixing the time for the different departments of the State government to submit payroll requisitions so that officials and employees shall be paid at least once every thirty-one days on or about the end of each calendar month though not necessarily for services rendered for a calendar month.

It is obvious when the applicable statutes are read together that it was not the intention of the Legislature, by the provisions of Section (13a), to give the respondent authority to delay payment to officials and employees of the State government for services rendered during the month of October until the 15th day of November, as indicated by his memorandum of March 28, 1958. From the following allegation in his verified answer, it would appear that respondent found it unnecessary to attempt to promulgate such a regulation: "Respondent avers that in past years two days constituted the normal processing period for payroll requisitions; however, under the new procedure the processing period may be considerably less, perhaps only a day, due to the priority now given to payroll requisitions."

Mandamus is an extraordinary remedy by which a petitioner may enforce a clear legal right, but the right

must exist when the proceeding is instituted. It cannot be established in the proceeding itself; the proceeding is merely the vehicle by which it is enforced. The rights which petitioners allege in these cases could come only from the Legislature. Under the division of powers provision of the Constitution of this State, the authority to make a law is within the exclusive province of the legislative branch of the government. This Court exists and functions as a part of the judicial branch of the government, and is empowered to construe and interpret the law, but not to enact it. If any of the parties to these proceedings are aggrieved by the applicable statutes, relief can come only from the Legislature.

The petitioners having failed to show a clear legal right to the relief prayed for, the writs will, therefore, be denied and the rules heretofore issued in these proceedings will be discharged.

*Writs denied.*