582 S.E.2d 835

**CONSOLIDATED NATURAL GAS COMPANY, a Delaware Corporation, Petitioner Below, Appellant**

v.

**Joseph M. PALMER, as Tax Commissioner of the State of West Virginia, Respondent Below, Appellee.**

No. 30735.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided May 6, 2003.

Paul G. Papadopoulos, David K. Higgins, Robinson & McElwee, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Stephen B. Stockton, Senior Assistant Attorney General, Charleston, for the Appellee.

ALBRIGHT, Justice:

In this appeal from the November 5, 2001, final order of the Circuit Court of Harrison County, Consolidated Natural Gas Company (hereinafter "CNG") objects to that portion of the lower court's ruling upholding the Administrative Decision of the state tax commissioner [1] (hereinafter "tax commissioner") with respect to what activities which generate gas storage income are included in the calculation of CNG's tax credit against its business franchise tax liability. The tax commissioner brings a cross-appeal challenging the lower court's ruling that management services should not be included as part of the same calculation. After careful reflection on the issues in light of the relevant law, we find merit in the arguments advanced by each party which causes us to reverse the lower court's ruling.

## I. Factual and Procedural Background

CNG and its approximately twenty affiliated companies operate natural gas wells, storage reservoirs and pipeline facilities in West Virginia as well as other states. One

1. At the time this appeal was filed, Joseph M. Palmer was the tax commissioner; subsequently, Rebecca Melton Craig assumed the tax commissioner post.

of the affiliates, CNG Transmission Corporation (hereinafter "CNG Transmission"), is headquartered in Clarksburg, West Virginia. CNG Transmission operates pipelines and in so doing owns or manages gas storage fields and facilities including storage of gas in depleted oil and gas fields. Within the allowable rates set by the Federal Energy Regulatory Commission, CNG charges its customers gas storage fees for various storage activities. These income-generating storage activities fall into four categories: (1) injection of gas into a storage reservoir; (2) withdrawal of gas from a storage reservoir; (3) storage capacity rights, which may be likened to rental of gas storage space; and (4) storage demand rights, purchase of which entitles a customer to withdraw gas from the company's storage reservoirs.

CNG is responsible for payment of the business franchise tax[2] and the business and occupation tax (hereinafter "B & O tax")[3] properly levied on these gas storage activities and/or properties. While the business franchise tax applies to all major companies engaging in business in West Virginia, the B & O tax applies only to utilities doing business in the state.[4] Under the business franchise tax statute, tax credits are available to utilities that are subject to both the franchise tax and the B & O tax. Acting as the parent company, CNG filed its West Virginia based business franchise tax returns for the tax years 1991 through 1995 on a consolidated basis, that is, a single return was filed for CNG and its affiliates, including CNG Transmission. CNG claimed that it qualified for the tax credit allowed by West Virginia Code § 11–23–17(b) (1989) (Repl. Vol. 2002) as an offset to its business franchise tax liability and that income from all of its storage activi-

ties in West Virginia should be included in the tax credit calculation.[5] The tax department initially denied that the tax credit was available to taxpayers such as CNG. In accordance with the procedures set forth in West Virginia Code Chapter 11, Article 10, CNG challenged this determination by timely filing a petition with the tax commissioner, who assigned an administrative law judge to conduct necessary hearings on the matter. In the Administrative Decision dated August 10, 2000, which resulted from this process, the tax commissioner ruled that the tax credit was indeed applicable to CNG as a taxpayer paying the B & O tax on gas storage under West Virginia Code § 11–13–2e.[6] However, the Administrative Decision limited the amount of gas storage income which could be factored into the calculation of the tax credit thereby significantly reducing the amount of the tax credit from that which CNG calculated.

CNG also disagreed with another ruling contained in the Administrative Decision regarding whether the fees from management services[7] one CNG affiliate provides for another is included in the tax credit calculation. The Administrative Decision held that even though the revenue generated from these services produces essentially no income, they must be accounted for as gross receipts in the tax credit calculation.

CNG appealed these rulings to the Circuit Court of Harrison County. W.Va.Code § 11–10–10 (1986) (Repl. Vol. 1999).[8] By its order dated November 5, 2001, the circuit court upheld the Administrative Decision regarding what income from gas storage activities should be included in the tax credit calculation. However, the lower court concluded in essence that the revenue from man-

---

2. W.Va.Code § 11–23–1 through 28.

3. W.Va.Code § 11–13–1 through 31.

4. CNG may be responsible for payment of other West Virginia taxes, but only the business franchise and B & O taxes are relevant to this appeal.

5. CNG claimed below that the statutory calculation also included the income from gas transportation activities, however, the company chose not to pursue this issue as part of its present appeal.

6. West Virginia Code § 11–13–2e was amended in 1995, nonetheless, the portion of the statute

relevant to the tax period addressed by this appeal was left unaltered.

7. As explained by CNG, management services include legal, accounting, financial, supervisory, administrative and other operational services.

8. This appeal was filed prior to the 2002 amendment of West Virginia Code § 11–10–10, and the appeal proceeded according to the provisions of the 1989 statute.

agement services should not be part of the tax credit calculation because the services produce no income.

CNG now challenges by appeal to this Court the circuit court's determination of what constitutes income from gas storage activities. The tax commissioner has filed a cross appeal regarding the management services ruling.

## II. Standard of Review

■ As with many tax appeals, the disagreement between the parties is not related to the facts. Instead, the issues raised involve the application of statutory law for which review is de novo. As we said in syllabus point one of *Appalachian Power Co. v. State Tax Dept.*, 195 W.Va. 573, 466 S.E.2d 424 (1995), "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."

## III. Discussion

Although we will discuss the question relating to gas storage income separately from that involving management service revenue, the tax credit calculation involving both matters is set forth in a single statute, West Virginia Code § 11–23–17. The portion of this statute containing the relevant calculation reads as follows:

(b) For taxable years ending after the thirtieth day of June, one thousand nine hundred eighty-eight, a credit shall be allowed against the tax imposed by this article equal to the amount of franchise tax liability due under this article, for the taxable year (determined before application of other allowable credits) multiplied by a fraction, the numerator of which is the gross income of the business subject to tax under article thirteen [§ 11–13–1 et seq.] of this chapter [9] and the denominator of which is the total amount of gross receipts derived from or attributable to all of taxpayer's activity in West Virginia: Provided, That such credit shall be prorated and only that amount attributable to months of the taxable year beginning after June thirtieth, one thousand nine hundred eighty-eight, shall be allowed as a credit.

*Id.* Thus, the calculation of the tax credit is determined by applying the following formula:

$$\frac{\text{GROSS INCOME OF THE BUSINESS SUBJECT TO B \& O TAX}}{\text{TOTAL GROSS RECEIPTS FROM ALL TAXPAYER ACTIVITY IN WEST VIRGINIA}} \times \text{FRANCHISE TAX DUE}$$

CNG's argument regarding income from gas storage activities relates to the numerator of the statutorily prescribed fraction multiplier, while the tax commissioner's assertion involving management services fees concerns the denominator. Our discussion will be divided accordingly.

### A. Numerator: Gross income of the business subject to B & O tax

■ CNG maintains that the court below erred by affirming the ruling of the tax commissioner which resulted in only a portion of the company's income from gas storage activities being included in the numerator of the tax credit fraction as the gross income of CNG which is subject to the B & O tax. According to CNG, the tax commissioner's decision is faulty because it is based on the erroneous conclusion that the revenue which is subjected to the B & O tax as the "business of gas storage"by West Virginia Code § 11–13–2e (1995) (Repl. Vol. 1999) is the same as the income of the business of gas storage entitled to be included in the numerator of the credit on franchise taxes in West Virginia Code § 11–23–17(b).

The following portion of West Virginia Code § 11–13–2e is relied upon by the tax commissioner to define what *income* from CNG's gas storage activities should be included in the numerator of the tax credit fraction:

§ 11–13–2e. Business of gas storage; effective date

(a) Rate of tax.—Upon every person engaging or continuing within this state in any gas storage business utilizing one or more gas storage reservoirs located within this state, the tax imposed by section two [§ 11–13–2] of this article shall be equal to

9. Article 13 of Chapter 11 of the West Virginia Code is entitled "Business and Occupation Tax."

five cents multiplied by the sum of either (1) the net number of dekatherms of gas injected into such a gas storage reservoir during a tax month or (2) the net number of dekatherms of gas withdrawn from such a gas storage reservoir during a tax month, whichever is applicable for that month, whether or not such gas is owned by, or is injected or withdrawn for, the storage operator or any other person. . . .

As is evident from the face of this statute, it provides a means by which B & O taxes for gas storage businesses are measured. The net dekatherm calculation does not reflect the "gross *income* of the business subject to [the B & O] tax" which comprises the numerator of the tax credit fraction set forth in West Virginia Code § 11–23–17. Even if West Virginia Code § 11–13–2e (a) could be read to represent a measure of income, the income from gas storage activities derived from the net dekatherm calculation represents only a portion of the income earned by CNG for injecting or withdrawing gas from its reservoirs, which income is further supplemented by sales of storage demand rights and storage capacity rights. Consequently, the tax commissioner's position is inherently illogical because the tax credit statute expressly includes gross income from a business, which in this case would be all income from gas storage activities.

Be that as it may, the tax commissioner goes on to suggest that the net dekatherms measure is appropriate for calculating the tax credit of a gas storage business because the measure used for determining the tax credit for other industries is the same one that is used in determining the B & O tax. Nevertheless, as the tax commissioner fully recognizes, gross income or a criterion readily equated with gross income is the measure used to calculate the B & O tax for a number of businesses eligible for the tax credit. The only business other than gas storage for which gross income is not used to calculate the B & O tax rate is the electric industry. Importantly, the reason why the calculation of B & O tax and the business franchise tax credit are based on a kilowatt hour measure for the electric industry is because there is an express provision in the B & O tax statute directing that the tax credit for the electric industry be measured on a kilowatt hour basis. There is no like provision in the B & O statute designating net dekatherms as the tax credit measure applicable to gas storage businesses. It is clear that the Legislature could have designated net dekatherms as the basis for calculating the tax credit as it did for the electric industry, but there is no express or implied indication of the Legislature's intent to do so. As we have repeatedly stated, we are bound in our examination of statutory provisions "to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Compensation Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

We find persuasive CNG's assertion that the definitions of "business" and "gas storage service" contained in the definition section of the B & O tax article provide a clearer indication of legislative intent regarding what gas storage activities are to be included in the tax credit numerator. The relevant terms identified by CNG are defined in West Virginia Code §§ 11–13–1(b)(6) and (9) respectively as follows:

> (6) "Business" shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit, either direct or indirect. "Business" shall include the rendering of gas storage service by any person for the gain or economic benefit of any person, including, but not limited to, the storage operator, whether or not incident to any other business activity.
>
> . . . .
>
> (9) "Gas storage service" means the injection of gas into a storage reservoir, the storage of gas for any period of time in a storage reservoir, or the withdrawal of gas from a storage reservoir. Such gas may be owned by the storage operator or any other person.

Moreover, West Virginia Code § 11–13–1(b)(4) provides a definition of "gross income" which is to be applied to the B & O tax statutes "unless a different meaning is clearly required by either the context in which the term is used or by specific definition." W.Va.Code § 11–13–1(a). Gross income under the B & O tax statute means:

> [T]he gross receipts of the taxpayer, received as compensation for personal ser-

vices and the gross receipts of the taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible property (real or personal), or service, or both, and all receipts by reason of the investment of the capital of the business engaged in, including rentals, royalties, fees, reimbursed costs or expenses or other emoluments however designated and including all interest, carrying charges, fees or other like income, however denominated, derived by the taxpayer from repetitive carrying of accounts, in the regular course and conduct of his business, and extension of credit in connection with the sale of any tangible personal property or service, and without any deductions on account of the cost of property sold, the cost of materials used, labor costs, taxes, royalties paid in cash or in kind or otherwise, interest or discount paid or any other expenses whatsoever.

W.Va.Code § 11–13–1(b)(4).

 This Court has held that "[s]tatutes which ... have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975). Statutes so regarded "must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." Syl. Pt. 3, in part, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958). By applying the earlier quoted statutory definitions governing B & O tax provisions to the factors in the numerator of the tax credit fraction, we conclude that the Legislature intended "gross income" of gas storage businesses included in the numerator of the tax credit fraction set forth in West Virginia Code § 11–23–17(b) is gross receipts received as compensation for the business of providing all gas reservoir injection, storage and withdrawal services. Consequently, all income-generating gas storage activities of CNG should be included in the tax credit numerator. Accordingly, we reverse the final order of the circuit court upholding the Administrative Decision of the tax commissioner in this regard.

The Legislature is the ultimate authority on how the State's purse is handled. In this case, the Legislature could have narrowed the scope of income to be factored in the tax credit numerator for gas storage businesses as it did for electric businesses but made the policy decision not to do so. Our decision simply respects the Legislature's authority to make such determinations.

## B. Denominator: Total Gross Receipts from All Taxpayer Activity in West Virginia

 By way of cross-appeal, the tax commissioner contends that the lower court erred by concluding that fees generated by CNG for management services provided among CNG affiliates should not be included in the denominator of the tax credit fraction. CNG claims here, as it did below, that because the management services are provided at cost, it makes no money on these transactions and, therefore, these reimbursements should be disregarded with respect to the tax credit calculation. The tax commissioner points out that the only way that CNG's claim might be valid is if the measure of the tax credit denominator was net income rather than gross receipts. We agree with the tax commissioner.

 Our overriding concern when determining the meaning of a statute is to be faithful to legislative intent so that "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970). The tax credit statute clearly states that the denominator is to include "gross receipts derived from or attributable to all of taxpayer's activity in West Virginia." W.Va.Code § 11–23–17(b). Fees are charged and revenues are generated as a result of the management services provided. While parties may suggest the meaning of terms in a statute, we are obliged, "[i]n the absence of any specific indication to the contrary, [to give] words used in a statute ... their common, ordinary and accepted meanings." Syl. Pt. 1, in part, *Tug Valley Recovery Center, Inc. v. Mingo County Comm.,* 164 W.Va. 94, 261 S.E.2d 165 (1979). Since we find no qualification appearing in the subject statute, a business's

gross revenue which is included in the denominator of the tax credit fraction set forth in West Virginia Code § 11–23–17(b) is all revenue received from all business activity in West Virginia, regardless of whether a profit is realized. CNG's management services fees fall within such gross receipts and should be included in the tax credit fraction denominator; therefore, the circuit court's order with respect to CNG's management fees is reversed.

## IV. Conclusion

Based upon the foregoing, the November 5, 2001, order of the Circuit Court of Harrison County is reversed with respect to the factors included in the numerator and denominator set forth in West Virginia Code § 11–23–17(b). The matter is remanded to the circuit court for correction of the order and for recalculation of the tax credit by the tax commissioner.

Reversed and remanded.