IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MICHAEL BAKER AND GEORGE CAMERON BAKER,**
**Trustees of the George C. Baker Trust Dated July 20, 2002;**
**George Cameron Baker and Susan Ann Baker,**
**Defendants Below, Petitioners**

**FILED**

**November 12, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-253**     (Cir. Ct. Braxton Cnty. Case No. CC-04-2021-AA-1)

**DANIEL C. COOPER, as Executor of the Estate of**
**George C. Baker,**
**Plaintiff Below, Respondent**

### MEMORANDUM DECISION

Michael Baker and George Cameron Baker, Trustees of the George C. Baker Trust Dated July 20, 2002, George Cameron Baker, and Susan Ann Baker (collectively "Petitioners") appeal the May 24, 2024, order entered by the Circuit Court of Braxton County which reversed a Braxton County Commission May 21, 2021, order concerning attorney fees billed but not yet paid by an open estate. Dainel C. Cooper, as executor of George C. Baker's estate ("Estate") filed a response.[1] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

George C. Baker died testate on September 6, 2009, in Braxton County. His last will and testament designated his nephew, Mr. Cooper as executor. Per the terms of the will, the residuary of probate assets in the Estate is to be distributed to the George C. Baker Trust dated July 20, 2002 ("Residuary Trust"). Petitioners Michael Baker and George Cameron Baker are the trustees of the Residuary Trust. George Cameron Baker and Susan Ann Baker are the beneficiaries of the Residuary Trust.[2]

---

[1] Petitioners are represented by R. Terrance Rodgers, Esq. Mr. Cooper represents himself. Mr. Cooper is also represented by Jamison H. Cooper, Esq. and Steven F. Luby, Esq.

[2] Michael Baker is expressly excluded from any interest in the Residuary Trust.

The probate assets of the Estate had an aggregate value of $1,746,572.00. The non-probate assets of the Estate had an aggregate value of $2,316,408, including the $2,208,952 net value of the George Baker GST Non-Exempt Trust created under the Will of J.C. Baker, George C. Baker's father. The primary asset owned by the Estate is a debt owed to the Estate by J.C. Baker & Son (the "Stock Purchase Debt"), which arose from the purchase by J.C. Baker & Son, Inc. of all George C. Baker's stock in J.C. Baker & Son, Inc. on February 4, 2000.[3] J.C. Baker & Son, Inc. has failed to pay required installments on the Stock Purchase Debt since April of 2012.[4]

In 2017, John Rowan, an accountant Petitioners engaged to review the Estate's finances, expressed concerns to Mr. Cooper about the extent of bills for legal services performed by Steven Luby, counsel for the Estate, allegedly for entities other than the Estate.[5] Given that the probate assets of the Estate were $1,746,572, Petitioners expressed concern when invoiced (but mostly unpaid) attorney fees alone were amounting to about one-third of the assets of the Estate, approximately $600,000. More specifically, Petitioners were concerned that Mr. Luby was performing legal services for the George Baker GST Non-Exempt Trust, an entity which he did not represent.[6] In response, Mr. Cooper asserted that Mr. Luby's work on the George Baker GST Non-Exempt Trust enabled Mr. Cooper to

---

[3] J.C. Baker & Son, Inc. purchased George C. Baker's stock for $2,248,000 (as amended on November 1, 2002, to be $1,856,310). J.C. Baker & Son, Inc. is owned by Michael Baker and George Cameron Baker, who are also the trustees of the George C. Baker Trust dated July 20, 2002.

[4] Mr. Cooper obtained a judgment for the Estate in the amount of $1,555,112.72, plus interest, against J.C. Baker & Son, Inc. due to its failure to pay on the debt, which was affirmed by the Supreme Court of Appeals of West Virginia ("SCAWV"). *See J.C. Baker & Son Inc., v. Cooper*, No. 20-0338, 2021 WL 1614342 (W. Va. April 26, 2021) (memorandum decision).

[5] From 2010 through November 30, 2014, legal work for the estate administration was primarily performed by Mr. Luby during his tenure at the law firm of Lewis Glasser, PLLC ("Lewis Glasser"); thereafter, Mr. Luby's provided services through his current firm, Steptoe & Johnson, PLLC ("Steptoe"). In addition, Cooper Law Office, PLLC has provided legal services to the Estate. Raymond Keener has served as special counsel to the Estate from 2019 forward.

[6] In the engagement letter between Mr. Cooper and Steptoe, it was agreed that Mr. Luby's only client was the Estate.

report the proper value of non-probate assets on the Estate's federal estate tax return.[7] Mr. Cooper did not take any further action on Petitioners' concerns.

Petitioners filed a petition to remove Mr. Cooper as Executor with the Braxton County Commission. On March 3, 2020, Petitioners filed a reply to the Estate's response to the removal petition. Also on March 3, 2020, Petitioners filed their Motion for Review of the Amount of Attorney Fees Incurred by Executor Incurred in Connection with his Administration of the Estate ("Attorney Fee Review Motion"). The Attorney Fee Review Motion requested that the county commission determine that the attorney fees billed to the Estate for legal services provided by Mr. Luby from 2009-2016 were not reasonable or necessary for the proper administration of the Estate.[8]

Attached to the Attorney Fee Review Motion were affidavits from Robert Tweel and John Rowan. Mr. Tweel, an attorney who also testified at the removal hearing, reviewed between 2,500 and 3,000 pages of documents provided by Mr. Luby, including the Estate appraisement, the submitted non-probate inventory for the Estate, a draft of the federal estate tax return for the Estate, and a certain valuation report for the stock of J.C. Baker & Son, Inc. These documents were the basis for Mr. Tweel's opinion, offered into evidence at the removal hearing, as well as in his affidavit attached to the Attorney Fee Review Motion, regarding the lack of reasonableness of the nearly $600,000 in attorney fees that had been billed to the Estate as of November 15, 2016. In his affidavit, Mr. Tweel stated that in his professional opinion, between $50,000 and $75,000 was a reasonable amount for the cost of legal services needed to complete the administrative tasks for the Estate. Mr. Cooper filed a response to the Attorney Fee Review Motion on March 6, 2020.

At the removal hearing on March 6, 2020, Petitioners presented Mr. Tweel and Mr. Rowan as expert witnesses and presented certain exhibits to the county commission. It is disputed whether Mr. Cooper was properly notified that Mr. Tweel and Mr. Rowan were going to testify at the Removal Hearing,[9] but the county commission nevertheless admitted

---

[7] The value of assets of the George Baker GST Non-Exempt Trust was to be reported on the Estate's federal estate tax return. The assets held by the George Baker GST Non-Exempt Trust included certain shares of J.C. Baker & Son, Inc. and certain real estate to have been conveyed to the trust under the will of J.C. Baker.

[8] Mr. Luby's work on the allocations of the J.C. Baker Trusts spanned from 2009 to 2016, at which point it was submitted to the trustee of the J.C. Baker Trust and the executor of the J.C. Baker estate. The allocations of property were not approved until 2020, four years after Mr. Cooper requested approval.

[9] Although the Petitioners state that Mr. Cooper was notified that Mr. Tweel and Mr. Rowan would be called as witnesses at the Removal hearing, Mr. Cooper asserts that Mr. Tweel and Mr. Rowan were "surprise expert witnesses" presented without any advance notice.

their testimony for the limited purpose of considering whether Mr. Cooper's administration of the unpaid attorney bills was cause for removal. Mr. Cooper objected to the admission of any testimony by Mr. Tweel or Mr. Rowan at the removal hearing on the basis that his supervision of *unpaid* attorney bills was not relevant to determining whether he should be removed from his position as executor.[10] Shortly after the Removal Hearing, Mr. Cooper submitted an affidavit from Harmon A. Brown, an attorney with whom Mr. Luby had consulted in working on the administration of the Estate, to counter evidence on the attorney fee issue adduced by Petitioners at the removal hearing. Mr. Brown opined that Mr. Tweel's affidavit ignores that an executor has the responsibility under the Internal Revenue Code to report an accurate value for the assets in the George Baker GST Non-Exempt Trust and that it was reasonable for Mr. Luby to prepare certain allocations of property to the George Baker GST Non-Exempt Trust.[11]

No action was taken by the fiduciary supervisor regarding the Attorney Fee Review Motion for several months.[12] Petitioners' counsel sent an email to the fiduciary supervisor and Mr. Cooper on February 2, 2021, to notify the fiduciary supervisor that the Attorney Fee Review Motion was in a posture for her decision. In that email, Petitioners' counsel requested that the fiduciary supervisor advise whether she would like one or both of the parties to prepare a proposed order. Six days later, the fiduciary supervisor called Petitioners' counsel and requested that a proposed order be submitted.[13] Two days after that call, counsel for Petitioners submitted, via email, a proposed order to the fiduciary supervisor, on which Mr. Cooper and his counsel were copied. The next day, Mr. Cooper objected to the review of the unpaid fees and requested a conference.[14] On February 11,

---

[10] The county commission, as affirmed by the SCAWV, determined that Mr. Cooper should not be removed as Executor and that unpaid attorney fees were not a cause for removal. *See George C. Baker Trust Dated July 20, 2002 v. Cooper*, No. 21-0866, 2022 WL 17444547 (W. Va. Dec. 6, 2022) (memorandum decision).

[11] Mr. Brown, a member of Schiff Hardin LLP, also assisted Mr. Luby in preparing and filing the federal estate tax return for the Estate.

[12] All findings made by either the fiduciary supervisor or fiduciary commissioner are subject to confirmation and approval by the county commission. *See* W. Va. Code § 44-3A-2. The county commission's order may be appealed to the circuit court. *See* W. Va. Code § 44-3A-22.

[13] Mr. Cooper asserts that this was an improper *ex parte* communication.

[14] As of the date that the Fiduciary Supervisor's order was entered, there were payments to Cooper Law Offices, PLLC, which were included in the settlement statements

4

2021, the proposed order was entered approximately four hours after the objections were filed, without any revisions or edits. No hearing was held on the Attorney Fee Review Motion and the fiduciary supervisor relied on the evidence taken at the Removal Hearing in making her decision. The fiduciary supervisor did not respond to any of the Respondent's objections or requests for conference or hearing.

On February 17, 2021, Mr. Cooper forwarded his objections to the fiduciary supervisor's order to the county commission.[15] On April 20, 2021, Petitioners filed their response to Mr. Cooper's objections. On April 23, 2021, the county commission heard oral arguments on the objections. On May 21, 2021, the county commission issued an order adopting the recommendations made by the fiduciary supervisor, concluding that the order set forth a specific factual and legal basis for the reasonableness of the legal expenses. The county commission imposed an initial maximum amount of $75,000 for attorneys' fees for the entire administration and settlement of the Estate (from 2009-2024 and thereafter) that is reduced by a credit given by the Estate to J.C. Baker & Son, Inc. against the delinquent Stock Purchase Debt in the amount of $61,000, resulting in a remaining $14,000. After taking into consideration the $13,443 in previously paid fees for work in 2009 and 2010, only $557 remained for all other attorneys' fees paid by the Estate for estate administration.[16]

Mr. Cooper appealed the county commission's order to the Circuit Court of Braxton County. On May 24, 2024, the circuit court reversed the county commission's May 21, 2021, order. The circuit court held that: (1) the fiduciary supervisor and the county commission exceeded their authority in deciding the reasonableness of unpaid invoices; (2) the Attorney Fee Review Motion should have been denied by the county commission on the grounds that Petitioners do not have the right to object to unpaid expenses per West Virginia Code § 44-4-6; (3) Mr. Cooper's due process rights were violated because no evidentiary hearing was held on the Attorney Fee Review Motion; (4) the $75,000 allowed for attorney fees was based on speculation about a simple administration of probate assets and not on the scope of this specific Estate; and (5) Mr. Tweel's opinion was clearly

---

filed by Mr. Cooper from 2009 to 2020. Neither the Fiduciary Supervisor, Petitioners, or any other interested party objected to payments in those settlement reports.

[15] On March 12, 2021, Steptoe, as an interested party, also filed an objection before the county commission to the Fiduciary Supervisor order.

[16] Mr. Cooper states that the Estate has incurred the following attorney fees related to the administration of the Estate since November 16, 2016: litigation (and appeal) of the Stock Purchase Debt judgment, the litigation (and appeal) relating to the Removal Petition, the litigation (and appeal) relating this matter, litigation to collect on the Stock Purchase Debt, and all other aspects of the Estate administration. The Respondent's brief goes into extensive detail regarding the attorney fees and how they were incurred.

insufficient to establish a maximum amount of $75,000 in attorney fees for the entire administration of the Estate. Specifically on the issue of the fiduciary supervisor's authority to review unpaid invoices for reasonableness, the circuit court held:

> The review and disallowance of unpaid attorney fees is not ripe for a review by the Fiduciary Supervisor until those attorney fees were actually paid by the Executor and reported on the settlement reports required to be filed. The Fiduciary Supervisor's disallowance of attorney fees was [sic] be made pursuant to the settlement of the Executor's accounts and in compliance with the statutory process set forth in Article 4 of Chapter 44 of the Code.

The circuit court also stated that the attorney fee orders of the fiduciary supervisor and the county commission "no longer [had] any force or effect on this matter" and that "any dispute or controversy related to the attorney fees that is hereafter presented to the Braxton County fiduciary supervisor shall be referred to an independent fiduciary commissioner to take testimony, hear objections, and make recommendations to the Braxton County Commission in accordance with West Virginia Code [§] 44-3A-41 and other applicable law." This appeal followed.

The circuit court's final order reversing the county commission's order and ultimate disposition are reviewed under an abuse of discretion standard. *See* Syl. Pt. 1, *Haines v. Kimble*, 221 W. Va. 266, 654 S.E.2d 588 (2007) (per curiam) (quoting Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996)). Challenges to findings of fact are reviewed under a clearly erroneous standard; conclusions of law are reviewed *de novo*. *See id.*

Petitioners raise five assignments of error on appeal, which we will consolidate for the purposes of this appeal. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (stating that "the assignments of error will be consolidated and discussed accordingly").

In their first and third assignments of error, Petitioners argue that the circuit court erred in concluding that the fiduciary supervisor did not have the authority to review the reasonableness of unpaid attorney fees and failed to address the fact that some of the legal services at issue were for entities other than the Estate. The fiduciary supervisor's authority to allow or disallow estate expenses is set forth in West Virginia Code § 44-4-12:

> The fiduciary commissioner in *stating and settling the account* shall allow the fiduciary *any reasonable expenses incurred by him as such*; and also, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise.

(emphasis added).

Petitioners argue that that fiduciary supervisors may exercise oversight authority at any time during the pendency of estate administration. In support of their position,

6

Petitioners assert that fiduciary supervisors "have general supervision of all fiduciary matters and of the fiduciaries or personal representatives thereof and of all fiduciary commissioners and of all matters referred to such commissioners." W. Va. Code § 44-3A-3(b). One of the specific responsibilities of a fiduciary supervisor is to make a recommendation to the county commission regarding the reasonableness of services provided by an expert hired by a personal representative. *See* W. Va. Code § 44-1-14(i). Moreover, Petitioners argue that expenses for legal services are "incurred," per West Virginia Code § 44-4-12, when the services have been performed and not when the expenses have been paid. Petitioners also argue that West Virginia Code § 44-3A-29[17] requires that the fiduciary supervisor make a recommendation to the county commission that the claims tendered for payment are reasonable before payment may be made.[18]

---

[17] West Virginia Code § 44-3A-29 states:

After the report of the fiduciary supervisor or the fiduciary commissioner on the claims against the estate of any decedent has been confirmed as aforesaid, and after one year from the time of the qualification of the first executor or administrator shall have elapsed, or four months in the case of settlements made pursuant to section nineteen of this article, the personal representative may pay the claims allowed by the commissioner against the decedent's estate or certified to him by courts wherein judgments or decrees against the estate have been rendered, according to the order of payment set forth in such supervisor's or commissioner's report, and pay legacies and distribute the surplus among the parties entitled thereto in the amounts and proportions determined by such supervisor or commissioner in his report as confirmed, withholding such sum as such report as confirmed, states to be necessary for the payment of any contingent, unliquidated or disputed claims, or claims not matured, or the proportions of any such equal to what is allowed to other creditors of the same class, and upon the determination from time to time of any such claims further payments and distributions may be made as the circumstances require. If the personal representative shall fail or refuse to pay claims and make distribution within three months following the time when he may legally do so, and no appeal has been taken from the order of confirmation of the report on claims, any party interested may institute an action against such personal representative to compel payment and distribution as provided by section twenty, article four of this chapter.

[18] Despite Petitioners' assertion to the contrary, West Virginia Code § 44-3A-29 does not state that the fiduciary supervisor is required to make a recommendation to the county commission regarding the reasonableness of the claims made against an estate. West Virginia Code § 44-3A-29 provides guidance on when claims made against an estate may be paid.

Petitioners argue that when reading West Virginia Code §§ 44-3A-3(b), 44-1-14(i), 44-3A-29, and 44-4-12 together, this Court should find that fiduciary supervisors have the authority to, from time to time or when requested throughout the administration of the estate, examine the progress of the administration of the estate and the reasonableness of the expenses.

On the other hand, Mr. Cooper argues that Chapter 44 should be construed such that objections to the "reasonableness" of expenses can only occur after the invoices have been paid. W. Va. Code § 44-4-12. Mr. Cooper relies on West Virginia Code § 44-4-2, which states that a personal representative must present "a statement of all the money, and an inventory of all securities, stocks, bonds[,] and all other property, including the value thereof, which any personal representative, guardian, curator or committee, has received, become chargeable with[,] *or disbursed*." W. Va. Code § 44-4-2 (emphasis added). He argues that once the annual or final statement is submitted to the fiduciary supervisor, then the fiduciary shall allow "any reasonable expenses incurred by [the executor]." W. Va. Code § 44-4-12. Mr. Cooper further asserts that West Virginia Code § 44-4-6[19] makes it clear that the fiduciary supervisor's authority to hear objections is limited to after the annual and final accountings have been reported. Mr. Cooper argues that the funds have not been disbursed per West Virginia Code § 44-4-2 and any objections on the issue of reasonableness are premature. To this point, Mr. Cooper asserts that he has not determined what attorney fees he is going to pay, or will have the funds to pay, and thus the county commission's order on the unpaid invoices charged to the Estate was essentially an advisory opinion on the issue. We agree with Mr. Cooper.

When interpreting statutory provisions, it is axiomatic that "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). Furthermore, "where two statutes are in apparent conflict, the Court must, if reasonably possible,

---

[19] West Virginia Code § 44-4-6 states:

When a fiduciary commissioner has before him for settlement the account of a fiduciary for any year, if there be any time prior to such year for which the fiduciary has not settled, the settlement shall be also for such time; and also if there be any errors or omissions in accounts for any previous years or periods the same shall be corrected in such settlement. Any person who is interested or appears as next friend for another interested in any such account may, before the fiduciary commissioner, insist upon or object to anything which could be insisted upon or objected to by him or for such other, before a fiduciary commissioner acting under an order of a circuit court for the settlement thereof made in a suit to which he or such other was a party.

construe such statutes so as to give effect to each." Syl. Pt. 4, *State ex rel. Graney v. Sims*, 144 W. Va. 72, 105 S.E.2d 886 (1958).

Applying these principles to the case before us, we conclude that West Virginia Code §§ 44-4-2 and 44-4-12 are more specific and should be given precedence over West Virginia Code § 44-3A-3(b). For this reason, we disagree with Petitioners' argument that the fiduciary supervisor's "general supervision" authority should be construed such that fiduciary supervisors may exercise oversight over the administration of an estate prior to the submission of annual or final settlement reports to the fiduciary supervisor, in which *paid* invoices would be noted. Chapter 44 does not expressly grant fiduciary supervisors the authority to exercise ongoing oversight of expenses incurred during the administration of an estate. However, West Virginia Code §§ 44-4-2 and 44-4-12 clearly state that the fiduciary commissioner reviews the reasonableness of expenses when "stating and settling the account" after the funds have been "disbursed." To the extent that West Virginia §§ 44-4-2 and 44-4-12 conflict with West Virginia Code § 44-3A-3(b), we find that the more specific statutes control.[20] Accordingly, we affirm the circuit court's holding that the fiduciary supervisor acted outside of her authority in deciding the reasonableness of unpaid invoices.

In applying our analysis above, we also affirm the circuit court's holding that the county commission order "no longer [has] any force or effect" because the issue of unpaid attorney fees was not ripe for consideration. Regarding ripeness, the SCAWV has held:

> The ripeness doctrine seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements. *Questions that may never arise* or are purely advisory or *hypothetical* do not establish a justiciable controversy[.]

*In re N.W.*, 249 W. Va. 201, 209-210, 895 S.E.2d 56, 64-65 (2023). Here, the $75,000 cap on the administration of the Estate was premature because expenses charged to the Estate have not been paid and any decision as to the reasonableness of unpaid invoices is purely advisory. Pursuant to West Virginia Code §§ 44-4-2 and 44-4-12, there is no justiciable controversy over unpaid invoices, or future expenses that could be charged to the Estate, because there is no certainty as to the amount of fees that will ultimately be paid by the Estate. In submitting the annual or final settlement report, the expenses that Mr. Cooper determines that the Estate can and should be pay will be on the report. At that point, Petitioners may object and seek review of the expenses. Therefore, we affirm the circuit

---

[20] We also reject Petitioners' argument that West Virginia Code § 44-3A-29 is controlling here because West Virginia Code § 44-3A-29 concerns claims against an estate, not expenses of an estate.

9

court's holding that the county commission's decision was not ripe for review because the attorney fees have not yet been paid by the Estate.[21]

Accordingly, we affirm the Circuit Court of Braxton County's May 24, 2024, order.

Affirmed.

**ISSUED:** November 12, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge Chad Lovejoy, sitting by temporary assignment

Judge S. Ryan White, voluntarily recused

---

[21] In light of our holdings on these assignments of error, it is unnecessary to address Petitioners' remaining assignments of error.