D.R. HORTON, INC., A DELAWARE CORPORATION, AND RCR COMPANIES, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE ALLAN R. EARL, DISTRICT JUDGE, RESPONDENTS, AND FIRST LIGHT HOMEOWNERS ASSOCIATION, A NEVADA NONPROFIT CORPORATION, FOR ITSELF AND FOR ALL OTHERS SIMILARLY SITUATED, REAL PARTY IN INTEREST.

No. 52684

September 3, 2009                                    215 P.3d 697

[Rehearing denied November 17, 2009]

*Wolfenzon, Schulman & Ryan* and *Bruno Wolfenzon*, Las Vegas; *Koeller Nebeker Carlson & Haluck, LLP*, and *Robert C. Carlson* and *Megan K. Dorsey*, Las Vegas, for Petitioner D.R. Horton, Inc.

*Hansen Rasmussen* and *R. Scott Rasmussen* and *Vadim Veksler*, Las Vegas, for Petitioner RCR Companies.

*Quon Bruce Christensen* and *Nancy E. Quon*, Las Vegas; *Law Office of James R. Christensen, P.C.*, and *James R. Christensen*, Las Vegas; *Maddox, Isaacson & Cisneros, LLP*, and *Troy L. Isaacson* and *Norberto J. Cisneros*, Las Vegas, for Real Party in Interest.

## OPINION

By the Court, HARDESTY, C.J.:

In this petition for extraordinary writ relief, we resolve whether a homeowners' association has standing to pursue constructional defect claims on behalf of its members with respect to alleged defects in individual units in a common-interest community. Because

the provisions of NRS Chapter 116, among other sources, demonstrate that a common-interest community includes individual units, we conclude that under NRS 116.3102(1)(d), a homeowners' association has standing to file a representative action on behalf of its members for constructional defects in individual units of a common-interest community. However, because such actions are filed by a homeowners' association in a representative capacity for individual units, the claims must be analyzed according to class action principles set forth in NRCP 23 and *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 854-57, 124 P.3d 530, 542-44 (2005).

## FACTS AND PROCEDURAL HISTORY

First Light is a planned, common-interest community that is located in Clark County, Nevada. Real party in interest First Light Homeowners Association (First Light HOA) oversees the community and owns the common areas of the First Light community, and its members own the individual units located within the community. First Light HOA is governed, in part, by First Light HOA's Declaration of Covenants, Conditions, and Restrictions and Reservation of Easements (CC&Rs). The CC&Rs govern, for example, the owners' property and voting rights, the organization of First Light HOA, and the HOA's duties and powers.

In February 2005, First Light HOA filed a complaint in its own name on behalf of itself and the unit owners against petitioner D.R. Horton, the developer of the community. Although individual homeowners were not named as parties to the complaint, First Light HOA alleged various causes of action claiming, in part, that both the individual units and the common areas of the community have constructional defects and deficiencies to, for example, the design and manufacturing of the stucco, drainage, and roofing.

In August 2008, D.R. Horton filed a motion for partial summary judgment with the district court, arguing that First Light HOA lacked standing to assert the majority of the claims because the claims related to individual units and not common areas. Specifically, D.R. Horton argued that NRS 116.3102(1)(d), which permits a homeowners' association to institute litigation "on behalf of itself or two or more units' owners on matters affecting the common-interest community," does not confer standing on the homeowners' association to assert constructional defect claims in individual units.

First Light HOA opposed D.R. Horton's motion for partial summary judgment, arguing, in part, that D.R. Horton lacked standing to challenge First Light HOA's ability to represent individual homeowners on claims related to their units. Additionally, First Light HOA maintained that NRS 116.3102(1)(d) authorizes a homeowners' association to maintain constructional defect claims on behalf of individual units because owners' units are considered a part of the common-interest community.

The district court denied D.R. Horton's motion for partial summary judgment, concluding that NRS 116.3102(1)(d) allows a homeowners' association to file suit on behalf of its members for constructional defects affecting individual units. D.R. Horton filed this petition for a writ of mandamus or, in the alternative, a writ of prohibition, challenging the district court's denial of its partial motion for summary judgment.

## DISCUSSION

Before addressing whether NRS 116.3102(1)(d) confers standing upon a homeowners' association to file suit on behalf of its members against a developer for damages caused by constructional defects in individual units, we first consider whether a developer lacks standing to challenge an association's ability to raise claims on behalf of its members.

We conclude that under NRS 116.3102(1)(d), a homeowners' association has standing to assert constructional defect claims in a representative capacity on behalf of individual units. However, because damages are awarded for claims within individual owner units, such actions are subject to class action principles discussed in *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 854-57, 124 P.3d 530, 542-44 (2005).

Thus, we conclude that a nonmember developer has standing to challenge whether a homeowners' association may properly assert claims in a representative capacity on behalf of its members. However, a nonmember developer is barred from challenging the adequacy of the internal procedures that a homeowners' association follows before commencing a civil action on behalf of its members.

### Standard of review

This court has original jurisdiction to issue writs of prohibition and mandamus. Nev. Const. art. 6, § 4. A writ of mandamus serves "to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station, or to control a manifest abuse of discretion." *We the People Nevada v. Secretary of State*, 124 Nev. 874, 879, 192 P.3d 1166, 1170 (2008). A writ of prohibition serves to stop a district court from carrying on its judicial functions when it is acting outside its jurisdiction. *Harvey L. Lerer, Inc. v. District Court*, 111 Nev. 1165, 1168, 901 P.2d 643, 645 (1995). Ordinarily, this court will not consider petitions for extraordinary writ relief where the petitioner challenges a district court order denying a motion for summary judgment, "unless summary judgment is clearly required by a statute or rule, or an important issue of law requires clarification." *ANSE, Inc. v. Dist. Ct.*, 124 Nev. 862, 867, 192 P.3d 738, 742 (2008). In addition, these extraordinary remedies may only be issued in cases "where there is

not a plain, speedy and adequate remedy'' at law. NRS 34.170; NRS 34.330.

Because a district court's order denying summary judgment is not independently appealable, *GES, Inc. v. Corbitt*, 117 Nev. 265, 268, 21 P.3d 11, 13 (2001), and D.R. Horton's petition raises an important issue of law and public policy, we exercise our discretion to address the merits of the petition.

*A nonmember developer may challenge whether a homeowners' association may properly institute a constructional defect action in a representative capacity, but cannot challenge the internal procedures followed by a homeowners' association in determining to institute the civil action*

First Light HOA argues that a developer lacks standing to challenge an association's ability to raise claims on behalf of its members, relying on NRS 116.31088(3) and section 6.11 of the Restatement (Third) of Property and its commentary. NRS 116.31088 governs the management of common-interest communities and sets forth the meeting and voting requirements that an association must fulfill before it files a civil action. First Light HOA argues that NRS 116.31088(3), which provides that ''[n]o person other than a unit's owner may request the dismissal of a civil action commenced by the association on the ground that the association failed to comply with any provision of this section,'' precludes a developer from challenging a homeowners' association's ability to file an action in a representative capacity.

We conclude that NRS 116.31088(3) prohibits a nonmember from challenging the adequacy of the procedure underlying the commencement of a civil action. However, nothing in NRS 116.31088 precludes a developer from challenging whether the homeowners' association may properly assert claims in a representative capacity on behalf of its members.[1] Similarly, we conclude that section 6.11 of the Restatement (Third) of Property and its commentary indicate that a nonmember developer is only barred from challenging the adequacy of the internal procedures that a homeowners' association follows before commencing a civil action on behalf of its members.

*A homeowners' association has standing under NRS 116.3102(1)(d) to assert causes of action for constructional defects on behalf of its members*

D.R. Horton argues that First Light HOA does not have standing to assert constructional defect claims on behalf of its members be-

---

[1]The Restatement reads: ''Except as limited by statute or the governing documents, the association has the power to institute . . . litigation . . . in its own name, on behalf of itself, or on behalf of the member property owners in

cause NRS 116.3102(1)(d) only allows a homeowners' association to assert claims on behalf of the common-interest community, and individual units are statutorily excluded from the definition of the common-interest community. In contrast, First Light HOA argues that it has standing to assert claims affecting individual units because, as defined in NRS 116.093, a unit is considered a part of the common-interest community.

NRS Chapter 116, also known as the Uniform Common-Interest Ownership Act (UCIOA), applies to all common-interest, planned communities. The purpose of the UCIOA is to "make uniform the law with respect to the subject of this chapter among states enacting it." NRS 116.1109(2). The parties dispute whether, under NRS Chapter 116, a homeowners' association has standing to institute an action on behalf of its members for constructional defect claims in individual units. We recognize that in the absence of an express statutory grant, an association does not have standing to bring suit on behalf of its member owners. NRCP 17(a); *Deal v. 999 Lakeshore Association*, 94 Nev. 301, 304, 579 P.2d 775, 777 (1978). Therefore, the question presented by this writ proceeding is whether NRS Chapter 116 provides an express statutory grant of standing on First Light HOA to assert claims affecting individual units within the common-interest community.

NRS 116.3102(1) provides, in pertinent part:

> Except as otherwise provided in subsection 2, and *subject to the provisions of the declaration*, the association may do any or all of the following:
>
> . . . .
>
> (d) Institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more units' owners *on matters affecting the common-interest community*.

(Emphases added.) D.R. Horton concedes that NRS 116.3102(1) provides an express statutory grant of standing on a homeowners' association; however, D.R. Horton argues that individual units are not matters that affect the common-interest community, and thus, First Light HOA does not have standing to assert constructional defect

a common-interest community on matters affecting the community." Restatement (Third) of Prop.: Servitudes § 6.11 (2000). The commentary following section 6.11 of the Restatement provides:

> If either the members on behalf of whom the association sues or the association meets normal standing requirements, the question whether the association has the right to bring a suit on behalf of the members is an internal question, which can be raised only by a member of the association.

*Id.* cmt. a.

claims in individual units. Therefore, to resolve this issue, we must determine whether the definition of a common-interest community includes individual units.[2]

This court has previously held that when the issue presented in an original writ proceeding is a question of statutory interpretation, this court will review the district court's decision de novo. *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008). This court has also established that when a statute is facially clear, it will give effect to the statute's plain meaning. *Public Employees' Benefits Prog. v. LVMPD*, 124 Nev. 138, 147, 179 P.3d 542, 548 (2008). If, on the other hand, a statute is ambiguous, because it is susceptible to more than one reasonable interpretation, this court will construe a statute by considering reason and public policy to determine legislative intent. *Cable v. EICON*, 122 Nev. 120, 124-25, 127 P.3d 528, 531 (2006). This court also assumes that, when enacting a statute, the Legislature is aware of related statutes. *Id.* at 125, 127 P.3d at 531.

We conclude that NRS 116.3102(1) is ambiguous because the statute is susceptible to two reasonable interpretations—either a "common-interest community" includes individual units, or it does not. Therefore, we turn to other provisions and definitions contained in NRS Chapter 116, along with the Restatement (Third) of Property and its commentary, to determine the Legislature's intent.

First, we turn to the definitions of "common-interest community," NRS 116.021, "unit," NRS 116.093, and "common elements," NRS 116.017, to determine whether a common-interest community includes individual units. A "common-interest community" is defined by NRS 116.021 as "real estate with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for real estate other than that unit." D.R. Horton argues that the phrase, "other than that unit" excludes units from the definition of the common-interest community. However, after reviewing the definitions of "unit" and "common elements," we conclude that the phrase, "other than that unit" does not exclude units from the common-interest community; rather, it simply expands the definition to require an owner to pay for realty other than *that* unit that he or she owns. A "unit," for example, is defined as "a physical portion of the common-interest community," NRS 116.093, and "common elements" include "all portions of the common-interest community

---

[2]NRS 116.3102(1) includes a provision to determine whether First Light HOA's CC&Rs limit its standing to assert claims on behalf of individual unit owners. But because the CC&Rs are nearly identical to the provisions of NRS 116.3102(1) and its corresponding definitions, it is not necessary to engage in a separate analysis to determine whether the CC&Rs limit First Light's standing.

other than the units." NRS 116.017(1).[3] In other words, by owning property in a "common-interest community," a property owner is obligated to pay certain expenses attached to real estate in addition to the unit he or she owns. The unit, however, is nonetheless part and parcel of the "common-interest community." Thus, we conclude that the collaboration of the definitions of "common-interest community," NRS 116.021, "unit," NRS 116.093, and "common elements," NRS 116.017, lead to the conclusion that units are considered a part of the common-interest community.

Accordingly, we conclude that where NRS 116.3102(1)(d) confers standing on a homeowners' association to assert claims "on matters affecting the common-interest community," a homeowners' association has standing to assert claims that affect individual units.

Our conclusion is further supported by section 6.11 of the Restatement (Third) of Property and its commentary. The Restatement provides that "[e]xcept as limited by statute or the governing documents, the association has the power to instiute . . . litigation . . . in its own name, on behalf of itself, or on behalf of member property owners in a common-interest community on matters affecting the community." Restatement (Third) of Prop.: Servitudes § 6.11 (2000). Notably, section 6.11 of the Restatement mirrors the UCIOA section 3-102(a)(4), which grants power to the association to bring suit on behalf of its owners, and after which NRS 116.3102(1)(d) is modeled. *See* Unif. Common Interest Ownership Act § 3-102(a)(4), 7 U.L.A. 934 (1994); Hearing on A.B. 221 Before the Assembly Comm. on Judiciary, 66th Leg., Ex. D (Nev., March 20, 1991); Hearing on A.B. 221 Before the Senate Judiciary Comm., 66th Leg., Ex. C (Nev., May 23, 1991). Comment a to section 6.11 of the Restatement explains:

> If either the members on behalf of whom the association sues or the association meets normal standing requirements, the question whether the association has the right to bring a suit on behalf of the members is an internal question, which can be raised only by a member of the association.

We conclude that the commentary following section 6.11 of the Restatement is persuasive and supports our conclusion that a home-

---

[3]Other statutory provisions in NRS Chapter 116 support the conclusion that units are a part of the common-interest community. *See, e.g.,* NRS 116.4103(1)(c) (requiring that a public offering statement fully disclose "[t]he estimated number of units in the common-interest community"); NRS 116.41035 (providing a limitation to the requirements of a public offering statement for "a common-interest community composed of not more than 12 units"); NRS 116.2107(3) (requiring that a declaration state the method to reallocate interest "[i]f units may be added to or withdrawn from the common-interest community"); NRS 116.41095 (describing the rights and responsibilities for potential investors who "enter into a purchase agreement to buy a home or a unit in a common-interest community").

owners' association may assert claims on behalf of its members. *See Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 583, 97 P.3d 1132, 1137 (2004) (noting that this court will look to the commentary of a model act where a Nevada statute is patterned after the act).

Nevertheless, we recognize that because NRS 116.3102(1)(d) and section 6.11 of the Restatement permit a homeowners' association to file an action in a representative capacity, the statutory grant must be reconciled with the principles and analysis of class action lawsuits and the concerns related to constructional defect class actions, which this court addressed in *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 124 P.3d 530 (2005). Indeed, the commentary to Restatement (Third) of Property section 6.11, which reaffirms that a homeowners' association has standing to assert claims affecting individual units, also provides, "[i]n suits where no common property is involved, the association functions much like the plaintiff in a class-action litigation, and questions about the rights and duties between the association and the members with respect to the suit will normally be determined by the principles used in class-action litigation." Restatement (Third) of Prop.: Servitudes § 6.11 cmt. a (2000).

Therefore, because a homeowners' association functions much like a plaintiff in a class action, we conclude that when an association asserts claims in a representative capacity, the action must fulfill the requirements of NRCP 23, which governs class action lawsuits in Nevada. And we turn to both NRCP 23 and the principles expressed in *Shuette* to determine how "questions about the rights and duties between the association and the members," Restatement (Third) of Prop.: Servitudes § 6.11 cmt. a, shall be resolved. When describing the policy behind class action lawsuits, this court has declared that "class actions promote efficiency and justice in the legal system by reducing the possibilities that courts will be asked to adjudicate many separate suits arising from a single wrong." *Shuette*, 121 Nev. at 846, 124 P.3d at 537. However, in *Shuette*, this court announced that because a fundamental tenet of property law is that land is unique, "as a practical matter, single-family residence constructional defect cases will rarely be appropriate for class action treatment." *Id.* at 854, 124 P.3d at 542. In other words, because constructional defect cases relate to multiple properties and will typically involve different types of constructional damages, issues concerning causation, defenses, and compensation are widely disparate and cannot be determined through the use of generalized proof. *Id.* at 855, 124 P.3d at 543. Rather, individual parties must substantiate their own claims and class action certification is not appropriate. *Id.*

However, in some constructional defect cases, a representative may properly bring a class action lawsuit. *Id.* at 856, 124 P.3d at 544. If, for example, common defects predominate over individual claims, the action may be suitable for class action treatment. *Id.* at 857, 124 P.3d at 544. Because constructional defect actions may be complex, it is particularly important for the district court to thoroughly analyze NRCP 23's requirements and document its findings. *Id.* In addition, because NRCP 23(c)(1) allows a district court to grant conditional class action certification, a court may later revoke class action certification if it determines that certification is problematic and requires individual trials. *Id.* at 857-58, 124 P.3d at 544.

We conclude that representative actions filed by homeowners' associations are amenable to the same treatment as class action lawsuits brought by individual homeowners, which we discussed in *Shuette*. Therefore, where a homeowners' association brings suit on behalf of its members, a developer may, under *Shuette*, challenge whether the associations' claims are subject to class certification. In doing so, the district court must conduct and document a thorough NRCP 23 analysis. This analysis will require the court to consider whether the claims and various theories of liability satisfy the requirements of numerosity, commonality, typicality, adequacy, and, as in *Shuette*, whether "common questions of law or fact predominate over individual questions," or whether the action satisfies one of the other two options set forth in NRCP 23(b).[4] *See id.* at 846, 850, 124 P.3d at 537, 539. Indeed, we emphasize that a shared experience alone does not satisfy the threshold requirements under NRCP 23. *See id.* at 858, 124 P.3d at 545. Instead, the court must determine, among other issues, which units have experienced constructional defects, the types of alleged defects, the various theories of liability, and the damages necessary to compensate individual unit owners. And if necessary, NRCP 23(c)(4) allows the district court to certify a class action with respect to certain issues or subclasses. To that end, the district court may classify and distinguish claims that are suitable for class action certification from those requiring individualized proof.

In sum, a homeowners' association filing a suit on behalf of its members will be treated much the same as a plaintiff in class action

---

[4]Specifically, in addition to considering whether common questions of law or fact predominate over claims concerning individual units, the district court, upon determining that the prerequisites enumerated in NRCP 23(a) are satisfied, could also consider whether the class action satisfies NRCP 23(b)(1) or (2).

litigation. Although an association has standing to assert claims on behalf of its members, the suit must fulfill the requirements of NRCP 23 and the principles and concerns discussed in *Shuette*.

## CONCLUSION

D.R. Horton's petition raises important issues of law and public policy related to a developer's standing to challenge a homeowners' association's right to bring an action, and a homeowners' association's standing to assert causes of action on behalf of individual unit owners within a common-interest community. We conclude that because a common-interest community includes both common elements and units, a homeowners' association has standing under NRS 116.3102(1)(d) to assert a cause of action against a developer for constructional defects within individual units. Additionally, although a developer may not challenge the internal procedures that an association uses before filing an action, the developer has standing to challenge the nature of the alleged damages and whether an association may, in accordance with NRCP 23, file a representative action on behalf of individual homeowners.

In this case, First Light HOA alleged various causes of action against D.R. Horton, claiming, in part, that both the individual units and the common areas of the community have defects and deficiencies pertaining to, for example, the design and manufacturing of the community, stucco, drainage, and roofing. In accordance with our analysis, we direct the district court to review the claims asserted by First Light HOA to determine whether the claims conform with class action principles, and thus, whether First Light HOA may file suit in a representative capacity for constructional defect claims within individual units. Accordingly, we deny the petition and instruct the district court to conduct further proceedings consistent with this opinion.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.