IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**March 28, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1577

UNIVERSITY COMMONS RIVERSIDE HOME OWNERS ASSOCIATION, INC.,
Plaintiff Below, Petitioner

v.

UNIVERSITY COMMONS MORGANTOWN, LLC; KOEHLER
DEVELOPMENT, LLC; COLLEGIATE HOMES, INC.; RICHARD KOEHLER;
FRANK KOEHLER; ADAM SHARP; RICHARD DUNLAP;
O.C. CLUSS PROFESSIONAL SERVICES, LLC; R.E. CRAWFORD
CONSTRUCTION, INC.; POZZUTO AND SONS, INC.;
BUILDING CODE ENFORCEMENT OFFICIAL OF STAR CITY;
HERRON ENGINEERING; EAGLE INTERIORS, INC.; BUH CONSTRUCTION;
TRIAD ENGINEERING, INC; AND UNIVERSAL FOREST PRODUCTS,
Defendants and Third-Party Defendants Below, Respondents

Certified Questions from the Circuit Court of Monongalia County
Honorable Susan Tucker, Judge
Civil Action No. 09-C-85

CERTIFIED QUESTION ANSWERED

Submitted: March 5, 2013
Filed: March 28, 2013

Benjamin L. Bailey, Esq.
John W. Barrett, Esq.
Sherrie A. Armstrong, Esq.
Bailey & Glasser LLP
Charleston, West Virginia
P. Gregory Haddad
Kerrie Wagoner Boyle
Morgantown, West Virginia
Attorneys for Petitioner

Shannon P. Smith, Esq.
Stephen G. Higgins, Esq.
Teresa J. Dumire, Esq.
Kay Casto & Chaney PLLC
Morgantown, West Virginia
Attorneys for Respondent R.E. Crawford Construction, Inc.

Thomas G. Steele, Esq.
Aimee N. Goddard, Esq.
Steele Law Offices
Clarksburg, West Virginia
Attorneys for Respondents University Commons Morgantown, LLC;
Koehler Development, LLC; Collegiate Homes, Inc.;
Richard Koehler; Frank Koehler; Adam Sharp; and Richard Dunlap

Kathleen Jones Goldman, Esq.
Erin McLaughlin, Esq.
Buchanan Ingersoll & Rooney, LLP
Pittsburgh, Pennsylvania
Attorneys for Respondent O.C. Cluss Professional Services, Inc.

Richard W. Gallagher, Esq.
E. Ryan Kennedy, Esq.
Robinson & McElwee PLLC
Clarksburg, West Virginia
Attorneys for Respondent Pozzuto and Sons, Inc.

Tamara J. DeFazio, Esq.
J. Robert Russell, Esq.
Shuman McCuskey & Slicer PLLC
Morgantown, West Virginia
Attorneys for Respondent Building Code Enforcement Official of Star City

Mary H. Sanders, Esq.
Patrick White, Esq.
Huddleston, Bolen LLP
Charleston, West Virginia
Attorneys for Respondent Herron Engineering

Joseph W. Selep, Esq.
Sharon A. Hall, Esq.
Zimmer Kunz
Pittsburgh, Pennsylvania
Attorneys for Respondent Eagle Interiors, Inc.

Charles F. Bagley III, Esq.
Campbell Woods PLLC
Huntington, West Virginia
Attorney for Respondent BUH Construction

David V. Moore, Esq.
DV Moore Law, PLLC
Charleston, West Virginia
Attorney for Respondent Triad Engineering, Inc.

David L. Wyant, Esq.
Diane G. Senakievich, Esq.
Bailey & Wyant PLLC
Wheeling, West Virginia
Attorneys for Respondent Universal Forest Products Inc.

JUSTICE LOUGHRY delivered the Opinion of the Court.

1.      "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."  Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

2.      "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

3.      "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."  Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

4.      West Virginia Code § 36B-3-102(a)(4) (2011), which authorizes a unit owners' association to institute litigation in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community, confers standing on the unit owners' association to assert claims on behalf of two or more unit owners with respect to matters affecting their individual units.

5. "'General supervisory control over all intermediate appellate, circuit, and magistrate courts resides in the Supreme Court of Appeals. W.Va. Const., art. VIII, § 3.' Syllabus Point 1, *Carter v. Taylor*, 180 W.Va. 570, 378 S.E.2d 291 (1989)." Syl. Pt. 2, *Stern v. Chemtall, Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005).

6. """A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris., Courts, section 171." Syllabus Point 3, *Shields v. Romine*, 122 W.Va. 639, 13 S.E.2d 16 (1940).' Syllabus Point 1, *State ex rel. Rees v. Hatcher*, 214 W.Va. 746, 591 S.E.2d 304 (2003)." Syl. Pt. 3, *Stern v. Chemtall, Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005).

LOUGHRY, Justice:

The Circuit Court of Monongalia County has certified six questions to this Court relating to the Uniform Common Interest Ownership Act (hereinafter "the Act") codified in Chapter 36B of the West Virginia Code. The Act "governs the formation, management, and termination of a common interest community, whether the community is a condominium, planned community, or real estate cooperative." *Foster v. Orchard Dev. Co., LLC*, 227 W.Va. 119, 121 n.2, 705 S.E.2d 816, 818 n.2 (2010) (citation omitted). The questions certified to this Court are as follows:

> (1) Is a Unit Owners' Association an adequate representative when a lawsuit is instituted by a Unit Owners' Association on behalf of two or more unit owners pursuant to W. Va. Code § 36B-3-102(a)(4) and the damages sought include unit specific damages affecting only individual units?

> (2) If the Unit Owners' Association is an adequate representative to institute litigation pursuant to W. Va. Code § 36B-3-102(a)(4) on behalf of individual unit owners for unit specific damages affecting only individual units, is a unit owner nonetheless a necessary and indispensable party pursuant to Rule 19 of the West Virginia Rules of Civil Procedure?

> (3) If individual unit owners are not named Plaintiffs in a lawsuit instituted on their behalf by a Unit Owners' Association and are not necessary and indispensable parties to the suit, does the Association have the authority under [W. Va. Code] § 36B-3-102(a)(4) to settle and release any and all claims of the unit owners when said individual unit owners have been provided reasonable notice of, and have made no objection to, said settlement and release? If so, what constitutes sufficient notice?

1

(4) Whether matters pertaining to a unit owners' claim for lost rent or inability to rent are matters that affect the common interest community for which the Unit Owners' Association may institute litigation pursuant to [W. Va. Code] § 36B-3-102(a)(4)?

(5) Pursuant to [W. Va. Code] § 36B-3-102(a)(4), what constitutes a "matter affecting the common interest community" and what constitutes a "unit specific" element?

(6) Is a representative example of unit owners sufficient to offer deposition testimony and trial testimony in this matter to establish defects and damages that are common to all units?

Upon careful review and consideration of the parties' briefs, oral argument, and the pertinent authorities, we answer the first question affirmatively and find it unnecessary to address the remaining questions. For the reasons set forth below, we conclude that this case should proceed in accordance with Rule 26 of the West Virginia Trial Court Rules.

## I.  Factual and Procedural Background

The plaintiff below and the petitioner herein, University Commons Riverside Home Owners Association, Inc. (hereinafter "HOA"), is a condominium owners' association that brought suit on its own behalf and on behalf of its members against various individuals and corporations seeking damages arising from the alleged defective development, negligent construction, and misleading marketing of the University Commons Riverside Condominium Complex (hereinafter "the Complex") located in Star City, West Virginia. The defendants

2

filed cross-claims for indemnity and contribution and filed third-party complaints against various subcontractors. All defendants and third-party defendants (hereinafter "respondents") have joined together before this Court, submitting a joint brief and argument.[1]

The Complex consists of 84 individually-owned units that are currently owned by approximately 147 individuals and/or entities. These individuals and entities are the members of the HOA. The HOA filed this action on February 13, 2009, asserting claims for breach of express and implied warranty of quality, failure to comply with public offering statement requirements, material omission in promotional materials, failure to complete and restore, negligence, strict liability, and breach of implied warranties of merchantability, fitness and habitability. The individual unit owners were not named as individual plaintiffs in the complaint.

The parties engaged in discovery for nearly three years.[2] According to the HOA, the parties have taken forty-four depositions and thirty-one experts have been

---

[1]The respondents are: University Commons Morgantown, LLC; Koehler Development, LLC; Collegiate Homes, Inc.; Richard Koehler; Frank Koehler; Adam Sharp; Richard Dunlap; O.C. Cluss Professional Services, LLC; R.E. Crawford Construction, Inc.; Pozzuto and Sons, Inc.; Building Code Enforcement Official of Star City; Herron Engineering; Eagle Interiors, Inc.; BUH Construction; Triad Engineering, Inc.; and Universal Forest Products.

[2]Upon entry of the order certifying questions to this Court, discovery was stayed.

identified–eleven for the HOA and twenty for the respondents. Fifteen unit owners have been deposed and thousands of pages of documents have been produced.

By motion dated November 17, 2010, some of the respondents[3] sought to have all unit owners joined as plaintiffs in this lawsuit pursuant to Rule 19 of the West Virginia Rules of Civil Procedure.[4] The respondents asserted that while the Act confers standing upon the HOA to represent its members as to matters affecting the "common interest community,"[5]

---

[3]The remaining respondents filed a response joining the motion to have all unit owners named as plaintiffs in the action.

[4]Rule 19(a) of the West Virginia Rules of Civil Procedure states:

> *Persons to be joined if feasible.* – A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

[5]West Virginia Code § 36B-1-103(7) (2011) defines "common interest community" as "real estate with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance or improvement of

4

the HOA has no authority to pursue claims for damages to individual units. According to the respondents, it became apparent during the course of discovery that many of the unit owners were seeking damages relating to defects pertaining to their individual units. Further, the respondents indicated that certain unit owners believed that the HOA may not have actual authority to bind the individual unit owners and that they would have the right to assert individual claims if they were not satisfied with the outcome of this lawsuit. The HOA opposed the motion. Concerned about the burdensome scope of discovery,[6] the HOA moved for a protective order on July 7, 2011, seeking to protect its right to bring suit on behalf of its members for all claims asserted in the complaint.

Thereafter, by order entered October 5, 2011, the circuit court granted the respondents' motion to join all unit owners, denied the HOA's motion for a protective order, and determined that the six questions set forth above should be certified to this Court. The order of certification was entered on November 18, 2011.

---

other real estate described in a declaration[.]"

[6]The respondents were seeking to depose more than 200 persons.

## II. Standard of Review

This Court has held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III. Discussion

The first question certified to this Court asks:

> Is a Unit Owners' Association an adequate representative when a lawsuit is instituted by a Unit Owners' Association on behalf of two or more unit owners pursuant to W. Va. Code § 36B-3-102(a)(4) and the damages sought include unit specific damages affecting only individual units?

The circuit court answered this question in the negative, finding that the HOA has standing to bring an action on behalf of its members only as to matters affecting the "common interest community" but lacks the capacity to represent unit owners with respect to damages to individual units.

The HOA argues, however, that it has standing to assert claims pertaining to individual units pursuant to the plain language of the Act. In that regard, the HOA contends that the Act's broad definition of "common interest community" clearly encompasses the individual units. Relying upon the definition of "unit," which pursuant to West Virginia Code § 36B-1-103(33) "means a physical portion of the common interest community

6

designated for separate ownership or occupancy," the HOA contends that it can represent its members with respect to damages affecting individual units because West Virginia Code § 36B-3-102 (2011) expressly states, in relevant part:

> (a) Except as provided in subsection (b), and subject to the provisions of the declaration, the association, even if unincorporated, may:
>
> . . . .
>
> (4) Institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community[.]

In contrast, the respondents argue that damages affecting only individual units could not reasonably be included in "matters affecting the common interest community." *Id.* In support of their argument, the respondents point out the different obligations of the HOA and the unit owners as set forth in West Virginia Code § 36B-3-107(a) (2011), which provides that "the association is responsible for maintenance, repair, and replacement of common elements, and each unit owner is responsible for maintenance, repair, and replacement of his unit." The respondents further contend that the HOA's broad definition of "matters affecting the common interest community" goes beyond the plain language of the statute. They assert that the word "affecting" requires that the litigation matter have an effect or influence on the common interest community. The respondents maintain that this clause contemplates a greater impact than damages to specific individual units.

7

In order to resolve the issue presented by this certified question, we must apply our rules of statutory interpretation and determine whether the "common interest community" includes individual units. Our rules of statutory interpretation are well established. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). In other words, "[w]here the language of a statutory provision is plain, its terms should be applied as written and not construed." *DeVane v. Kennedy*, 205 W.Va. 519, 529, 519 S.E.2d 622, 632 (1999) (citations omitted); *accord* Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Further, "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975); *accord* Syl. Pt. 3, *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958) ("Statutes in pari materia must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.").

8

Having carefully reviewed and considered the relevant statutory provisions, we find that the plain language of the Act supports the position advanced by the HOA. When the definitions of "common interest community," "condominium," "common elements," and "unit" set forth in West Virginia Code § 36B-1-103 are read and applied together with West Virginia Code 36B-3-102(a)(4), it is clear that the units are part of the common interest community. In that regard, as previously noted, the statute defines "common interest community" as "real estate with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for real estate taxes, insurance premiums, maintenance or improvement of other real estate described in a declaration[.]" W.Va. Code § 36B-1-103(7). Under the Act, a "condominium" is

> a common interest community in which portions of the real estate are designated for separate ownership and the remainder of the real estate is designated for common ownership solely by the owners of those portions. A common interest community is not a condominium unless the undivided interest in the common elements are vested in the unit owners.

W.Va. Code § 36B-1-103(8). Thus, a purchaser of a condominium unit owns his or her individual unit along with an undivided interest in the "common elements" defined as "all portions of the common interest community other than the units." W.Va. Code § 36B-1-103(4). Critically, the term "unit" is defined as "*a physical portion of* the common interest community designated for separate ownership or occupancy." W.Va. Code § 36B-1-103(33) (emphasis added).

9

The plain language of West Virginia Code § 36B-3-102(a)(4) permits a unit owner's association to bring an action not only on its own behalf but on behalf of "two or more unit owners." The only limitation on that action is that it must be one that "affect[s] the common interest community." *Id.* Given the fact that a unit is a physical portion of the common interest community, it necessarily follows that damages only affecting individual units are nonetheless matters affecting the common interest community. Thus, the HOA may assert claims on behalf of two or more unit owners for damages specific to individual units.

Our conclusion that the HOA may pursue claims on behalf of two or more unit owners for matters affecting their individual units is supported by the commentary to the Uniform Common Interest Ownership Act which served as the model for our Act.[7] The commentary to § 3-102 of the Uniform Common Interest Ownership Act which mirrors West Virginia Code § 36B-3-102 states: "This Act makes clear that the association can sue or defend suits even though the suit may involve only units as to which the association itself has no ownership interest." Unif. Common Interest Ownership Act § 3-102(a)(4) (1982), 7 U.L.A. 98 (2009). Other jurisdictions that have adopted the Uniform Common Interest

---

[7]*See Foster*, 227 W.Va. at 121 n.2, 705 S.E.2d at 818 n.2 (explaining that West Virginia's Uniform Common Interest Ownership Act is based upon the Uniform Common Interest Ownership Act).

10

Ownership Act[8] have also recognized that the representative capacity of unit owners' associations extends to matters such as construction defects that affect individual units.

For example, in *Yacht Club II Homeowners Ass'n, Inc. v. A.C. Excavating*, 94 P.3d 1177 (Colo. App. 2003), the homeowners' association for a townhome complex brought suit against subcontractors alleging negligence resulting in construction defects to both the individual units and the common areas of the development. Like the respondents in the case *sub judice*, the subcontractors argued that the homeowners' association lacked standing to pursue claims for construction defect damages to the individual townhome units. The Colorado court concluded otherwise, explaining that "[u]nder the CCIOA [Colorado Common Interest Ownership Act], individual units are a part of the 'common interest community.'" 94 P.3d at 1180. The Court stated:

> Recognizing the underlying purpose of § 38-33.3-302(1)(d), giving the phrase "common interest community" the meaning ascribed to it by the CCIOA, and realizing that an exception should not be read into a statute that its plain language does not suggest, warrant, or mandate . . . we conclude that § 38-33.2-302(1)(d) confers standing upon associations to pursue damage claims on behalf of two or more unit owners with respect to matters affecting their individual units.

*Id.* (citation omitted).

---

[8]In addition to West Virginia, states that have adopted the Uniform Common Interest Ownership Act include Alaska, Colorado, Connecticut, Delaware, Minnesota, Nevada and Vermont.

Similarly, in *D.R. Horton, Inc. v. Eighth Judicial District Court*, 215 P.3d 697 (Nev. 2009), a homeowners' association brought an action on behalf of itself and unit owners against the developer of the community alleging that both individual units and common areas had construction defects. The developer argued that the homeowners' association did not have standing to assert construction defect claims on behalf of its members because individual units were statutorily excluded from the definition of "common interest community." The Supreme Court of Nevada concluded that NRS Chapter 116, also known as the Uniform Common-Interest Ownership Act, did confer standing upon the homeowners' association to pursue claims that affected individual units. Analyzing the definitions of the relevant terms under the Act, the Court explained:

> [B]y owning property in a "common-interest community," a property owner is obligated to pay certain expenses attached to real estate in addition to the unit he or she owns. The unit, however, is nonetheless part and parcel of the "common-interest community". . . we conclude that the collaboration of the definitions of "common-interest community," NRS 116.021, "unit," NRS.116.093, and "common elements," NRS 116.017, lead[s] to the conclusion that units are considered a part of the common-interest community.

215 P.3d at 702.[9]

_____

[9]Other jurisdictions that have not adopted the Uniform Common Interest Ownership Act but that have similar statutes have also permitted owners' associations to pursue claims for damages to individual units. *See*, *e.g.*, *Association of Apartment Owners v. Venture 15, Inc.*, 167 P.3d 225, 255 (Haw. 2007) (concluding that owners' association was authorized to bring suit on behalf of individual apartment owners by statute that authorized associations to bring suit for damages to the common elements or to more than one apartment); *Milton Co. v. Council of Unit Own*ers, 729 A.2d 981, 990 (Md. App. 1998) (holding that

12

In summary, "'the national trend acknowledg[es] the representative capacity of the association . . . enabl[ing] the association to represent more effectively its owners in such matters as construction defects . . . avoid[ing] the necessity of assignment of claims, powers of attorney or class actions in many circumstances [and] thereby simplifying and making more practical the prompt action in the association's and owners' common interests.'" *Yacht Club II*, 94 P.3d at 1180 (citation omitted). Therefore, we now hold that West Virginia Code § 36B-3-102(a)(4), which authorizes a unit owners' association to institute litigation in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community, confers standing on the unit owners' association to assert claims on behalf of two or more unit owners with respect to matters affecting their individual units. Accordingly, we answer the first certified question affirmatively.

---

condominium association had standing to sue for damages based on defects in individually-owned units pursuant to statute which authorized association to act in representative capacity so long as the subject of the litigation was one "affecting the condominium"); *Sandy Creek Condo. Ass'n v. Stolt and Egner, Inc.*, 642 N.E.2d 171, 176 (Ill. App. Ct. 1994) (stating condominium association had standing to bring fraud claim even though all units were not affected by allegedly fraudulent statements pursuant to statute authorizing it to act in representative capacity in relation to matters involving the common elements or more than one unit); *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 538-541 (Utah 1983) (finding that condominium management committee could bring suit for misrepresentation on behalf of unit owners since statute authorized actions by management committee on behalf of two or more unit owners relating to common areas and facilities or more than one unit), *superceded by constitutional amendment on other grounds as recognized by State v. Drej*, 233 P.3d 476, 484 n.4 (Utah 2010); *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 895 (D.C. 1977) (finding that condominium association was authorized by statute and its own bylaws to bring suit regarding common elements of condominium or more than one unit).

13

Although we have determined that the HOA has the authority to pursue all of the claims at issue in this case pursuant to West Virginia Code § 36B-3-102(a)(4), the fact remains that the claims involve damages to both the common elements of the Complex and individual units. Moreover, having carefully reviewed all of the statutory provisions, this Court is cognizant of the fact that the Act provides no guidance or mechanism to handle these types of cases and, further, offers no procedure to be utilized to approve any type of settlement. Given these facts, this Court finds that the most prudent approach from this point forward is to proceed in accordance with Rule 26 of the West Virginia Trial Court Rules.

We are certainly mindful of the fact that "mass litigation" under Rule 26 contemplates "[t]wo (2) or more civil cases pending in one or more circuit courts," and that this case does not generally fit within that framework. W.Va. Tr. Ct. R. 26.04. However, while there is technically only one plaintiff in this case, that plaintiff, the HOA, is representing itself as well as its members–approximately 150 individuals and entities. Furthermore, the HOA and its members have allegedly sustained varying damages–some damages are common to each unit owner while other damages are specific to certain units. Said another way, although there are not multiple lawsuits in this instance, this case does involve multiple claims asserted on behalf of a large number of individuals and entities and does involve common questions of law and fact. With this in mind, our Mass Litigation Panel was created to deal with cases involving common questions of law or fact where large

14

numbers of individuals have been potentially harmed, physically or economically. *In re Tobacco Litigation*, 218 W. Va. 301, 311, 624 S.E.2d 738, 748 (Starcher, J., concurring); W.Va. Tr. Ct. R. 26.04. Therefore, because there is no mechanism in the Act to deal with this type of case, and because we do have a Mass Litigation Panel that was created to deal with cases involving common questions of law and fact, we are compelled to exercise our inherent authority pursuant to the Constitution of West Virginia and deem this matter suitable for resolution under Rule 26. As we have explained, "'General supervisory control over all intermediate appellate, circuit, and magistrate courts resides in the Supreme Court of Appeals. W.Va. Const., art. VIII, § 3.' Syllabus Point 1, *Carter v. Taylor*, 180 W.Va. 570, 378 S.E.2d 291 (1989)." Syl. Pt. 2, *Stern v. Chemtall, Inc.*, 217 W.Va. 329, 617 S.E.2d 876 (2005).

We recognized in *Chemtall*, that "'"[a] court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris., Courts, section 171." Syllabus Point 3, *Shields v. Romine*, 122 W.Va. 639, 13 S.E.2d 16 (1940).' Syllabus Point 1, *State ex rel. Rees v. Hatcher*, 214 W.Va. 746, 591 S.E.2d 304 (2003)." Syl. Pt. 3, 217 W.Va. at 331, 617 S.E.2d at 878. We further stated that "the principle necessarily applies to this Court as the inherent power of the judiciary has been well recognized in this jurisdiction. *See e.g.*, *Virginia Electric & Power Co. v. Haden*, 157 W.Va. 298, 306, 200 S.E.2d 848, 853 (1973); Syllabus Point 2, *Frazee*

15

*Lumber Co. v. Haden*, 156 W.Va. 844, 197 S.E.2d 634 (1973)." *Chemtall*, 217 W.Va. at 337, 617 S.E.2d at 884. Therefore, "it is our task to supervise the administration of justice in the circuit courts to ensure that fair standards of procedure are maintained." *Id.* We find that the only way to maintain fair standards of procedure in this instance is to transfer this case to the Mass Litigation Panel.

Having concluded that this case should proceed under Rule 26, we need not answer the remaining certified questions. To the extent necessary, the issues raised in those questions can be addressed by the Mass Litigation Panel. It is the Panel's duty to "develop and implement case management and trial methodologies to fairly and expeditiously resolve" the matters before it. W.Va. Tr. Ct. R. 26.05. Nonetheless, given that this case is not typical of the cases referred to the Mass Litigation Panel in that there are not multiple cases involved but, rather, one case involving multiple individuals and entities represented by one party, we believe that individual notice should be immediately given to all the members of the HOA to make them aware of the existence of this lawsuit and to advise them that they are currently represented by the HOA.[10]

---

[10]We recognize that these notice provisions are not exclusive and that the Mass Litigation Panel may add additional requirements as it deems necessary.

16

## IV. Conclusion

For the reasons set forth above, this Court finds it only necessary to answer the following certified question:

> Is a Unit Owners' Association an adequate representative when a lawsuit is instituted by a Unit Owners' Association on behalf of two or more unit owners pursuant to W. Va. Code § 36B-3-102(a)(4) and the damages sought include unit specific damages affecting only individual units?
>
> Answer: Yes.

Because this case is before this Court upon questions certified from the circuit court, we will not at this juncture transfer this matter to the Mass Litigation Panel. Rather, upon receipt of a Motion to Refer to the Mass Litigation Panel as provided by Rule 26.06 from the circuit judge, which should be filed and transmitted to the Clerk of this Court forthwith, the appropriate action will be taken.

Certified question answered.

17