142 Nev., Advance Opinion 22

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF ESTATE OF WILLIAM F. ULVANG.

JAMIE LIPSON,
Appellant,
vs.
ROBERT GETTO, PUBLIC ADMINISTRATOR FOR LYON COUNTY; JOHN R. ULVANG; JEAN H. STARKEY; RICHARD F. GREEN; HENRY F. STARKEY; SUSAN KOIVISTO; AND JOHN DOUGLASS MANN,
Respondents.

No. 89422

FILED

MAR 12 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order determining that a decedent's living first cousins are the sole legitimate heirs to his estate. Third Judicial District Court, Lyon County; John Schlegelmilch, Judge.

*Affirmed.*

Solomon Dwiggins Freer & Steadman, Ltd., and Brian P. Eagan, Alexander G. LeVeque, and Michael P. Desmond, Las Vegas,
for Appellant.

Prunty Law, PC, and Jessica C. Prunty, Carson City,
for Respondent John R. Ulvang.

Wallace & Millsap and F. McClure Wallace, Reno,
for Respondent Robert Getto.

Woodburn and Wedge and Sharon M. Jannuzzi, Reno,
for Respondents Richard F. Green, Susan Koivisto, and Henry F. Starkey.

Jean H. Starkey, Verona, Wisconsin,
Pro Se.

26-11521

John Douglass Mann, Phoenix, Arizona,
Pro Se.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, LEE, J.:

In this appeal, we consider whether NRS 134.070, which prescribes distribution of the decedent's estate to "the next of kin in equal degree," requires distribution to the decedent's closest living relatives per capita, to the exclusion of more remote relatives, or per stirpes, which would include more distant relations. After the death of William F. Ulvang, the district court determined that Ulvang's living first cousins were the sole heirs to Ulvang's estate under NRS 134.070, holding that the statute required a per capita without representation distribution of the estate. This resulted in the exclusion of appellant Jamie Lipson, Ulvang's first cousin once removed, from the inheritance. Lipson now appeals.

We hold that NRS 134.070 requires a per capita without representation distribution scheme. In doing so, we recognize the continuing validity of *In re McKay's Estate*, 43 Nev. 114, 184 P. 305 (1919), which informs our analysis. Moreover, our holding accords with the principles of civil intestacy law and traditional principles of statutory construction, which lead to the same result. Accordingly, we affirm.

*FACTS AND PROCEDURAL HISTORY*

William F. Ulvang, a Lyon County resident, died intestate in 2023, leaving an estate with an estimated value of $32 million. Ulvang was

predeceased by his wife and had no children. The Lyon County Public Administrator identified Ulvang's living first cousins as potential heirs of the estate. The Administrator then requested an order from the district court confirming Ulvang's living first cousins as the legal heirs of the estate to ensure proper distribution of its assets. Lipson, the child of one of Ulvang's predeceased first cousins—his first cousin once removed—contested this determination. Lipson argued that NRS 134.070 should be interpreted as providing a per stirpes distribution scheme, which would allow all of Ulvang's first cousins once removed to also be recognized as heirs of the estate by right of representation. The district court concluded that NRS 134.070 plainly and unambiguously requires a per capita distribution of the estate, not a per stirpes distribution, cutting off Lipson's bid for heirship. Accordingly, the district court determined that only respondents,[1] Ulvang's living first cousins, were heirs of his estate. Lipson appeals from this decision.

## DISCUSSION

This court reviews questions of statutory interpretation de novo. *N. Nev. Homes, LLC v. GL Constr., Inc.*, 134 Nev. 498, 500, 422 P.3d 1234, 1236 (2018). "When a statute is clear and unambiguous, [this court] give[s] effect to the plain and ordinary meaning of the words, and the primary consideration is the Legislature's intent." *Las Vegas Metro. Police Dep't v. Holland*, 139 Nev. 96, 99, 527 P.3d 958, 962 (2023) (internal quotation marks omitted). This court "avoids statutory interpretation that

---

[1]The Lyon County Public Administrator, Robert Getto, is also identified as a respondent in this case. However, in his answering brief, Getto takes no position on the appeal and commits to following the court's decision. Thus, when referring to "respondents," this opinion refers to the living first cousins.

renders language meaningless or superfluous" and will "interpret a rule or statute in harmony with other rules and statutes" where necessary. *Clay v. Eighth Jud. Dist. Ct.*, 129 Nev. 445, 451, 305 P.3d 898, 902 (2013) (internal quotation marks omitted).

*NRS 134.070 requires a per capita without representation distribution*

NRS 134.070 provides that when a decedent has no surviving spouse, children, or immediate family, the estate "goes to the next of kin in equal degree." This appeal requires us to address whether NRS 134.070 requires a per capita without representation distribution or a per stirpes distribution. "Per capita" means "by the head or individual" and refers to taking equally with other children or heirs. *See* 23 Am. Jur. 2d *Descent & Distribution* § 58 (2024). If a statute requires a distribution system of per capita without representation, it refers to a relative's taking, if at all, "in his or her own right, and not as a representative of a deceased ancestor." Restatement (Third) of Prop.: Wills and Donative Transfers § 2.4 cmt. j (1999).

Conversely, to take "per stirpes," or "by root or stocks," means to take by representation "the share that a deceased ancestor would have taken had he or she survived the intestate." Am. Jur. 2d *Descent & Distribution, supra* § 58. As relevant here, if NRS 134.070 requires a per capita without representation distribution, then the respondents would share equally, Lipson to take nothing. In contrast, if NRS 134.070 requires a per stirpes distribution, then Lipson and other first cousins once removed will be entitled to take whatever share their parents—the predeceased first cousins—would have taken if they had survived the decedent.

While NRS 134.070 does not mention the terms "per capita without representation" or "per stirpes," we conclude that NRS 134.070 requires a per capita without representation distribution. Our holding is

consistent with the holding in *In re McKay's Estate*, which interpreted the statutory predecessor to NRS 134.070 as requiring a per capita without representation intestate distribution and remains governing law. Our holding is also supported by NRS 134.070's language directing distribution to "the next of kin in equal degree," which the Restatement and other jurisdictions have nearly uniformly interpreted to require a per capita distribution, and which interpretation aligns with Nevada law addressing computation of degrees of consanguinity. Finally, we reject Lipson's arguments that canons of statutory interpretation indicate that NRS 134.070 should, along with similar intestacy statutes, be understood to require a per stirpes distribution scheme.

*The district court was correct in relying on* In re McKay's Estate

In its order below, the district court relied on *In re McKay's Estate*, 43 Nev. 114, 184 P. 305 (1919), in concluding that NRS 134.070 requires a per capita without representation intestate distribution. We hold that the district court did not err in relying on *McKay*, whose outcome compels a reading of NRS 134.070 under the per capita without representation theory.

*McKay* involved a dispute over a decedent's intestate estate between the decedent's nieces, nephews, and grandniece, who respectively vied for heirship. *Id.* at 116, 184 P. at 305. The grandniece requested that the court decree her to be an heir of the estate by representation through her deceased mother. *Id.* at 117, 184 P. at 305. The court considered the question under Section 259 of the Act to Regulate the Settlement of Estates of Deceased Persons. *Id.* at 119, 184 P. at 306. That statute, the predecessor

of NRS 134.070,[2] stated that "[i]f the intestate shall leave no issue, nor husband, nor wife, nor father, nor mother, and no brother or sister living at his or her death, *the estate shall go to the next of kin in equal degree.*" *See id.* at 121, 184 P. at 306 (emphasis added) (quoting 1915 Nev. Stat., ch. 130, § 254(4), at 150).

The court, calculating the degree of kinship, determined that the nieces and nephews were in a third degree of relationship to the decedent, and the grandniece was related in the fourth degree. *Id.* at 122, 184 P. at 307. The court concluded that the term "next of kin in equal degree" "excludes from the inheritance all kindred not in that degree of kinship to the intestate" and noted that "[t]his is the established law in all jurisdictions where the statute . . . is the same or substantially the same as the statute under consideration." *Id.* at 124, 184 P. at 307-08. Noting that this was "purely a question of statutory construction," the court determined that the statute designated the nieces and nephews as the "next of kin in equal degree," who "must inherit to the exclusion of the grandniece." *Id.* at 122, 184 P. at 307. The court elaborated that there was "little room for construction" and that, because the grandniece was not in an equal degree of kinship as the nieces and nephews, she "cannot inherit" by "the express prohibition of the statute." *Id.* at 126, 184 P. at 308. Accordingly, we understand *In re McKay's Estate* as clearly establishing that the prior statute, which is substantively similar to NRS 134.070, requires a per capita without representation distribution.

We reject Lipson's argument that *In re Estate of Melton*, 128 Nev. 34, 272 P.3d 668 (2012), renders *In re McKay's Estate* outdated. In

---

[2]*Compare* NRS 134.070, *with* 1915 Nev. Stat., ch. 130, § 254(4), at 150. The relevant statutory language at issue here is substantively the same as it was in 1919 when *McKay* was decided.

*Estate of Melton*, the respondent cited *McKay* in support of its argument that the definition section of the Nevada Probate Code should not be given substantive effect and claimed that giving effect to disinheritance provisions would make estate planning unpredictable. *See id.* at 46 & n.7, 272 P.3d at 675-76 & n.7. The court observed that *McKay* was an "unremarkable case" that "merely indicated that a general definition could not be 'carried into' a specific provision relating to rights of representation." *Id.* at 46 n.7, 272 P.3d 675 n.7 (quoting *McKay*, 43 Nev. at 127, 184 P. at 308). At no point did the *Melton* court substantively engage with *McKay*.

Contrary to Lipson's suggestion, *Melton* does not disturb the continuing validity of *McKay*'s holding. Lipson provides no compelling reasons why we should depart from the principle of *stare decisis* and overturn our precedent here. Lipson fails to show that the policy considerations and principles of statutory interpretation used by the *McKay* court are no longer sound. *See Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) ("[W]e will not overturn [precedent] absent compelling reasons for so doing. Mere disagreement does not suffice." (footnote omitted)). Thus, the district court did not err in relying on *McKay*, which calls for NRS 134.070 to be interpreted as requiring a per capita without representation scheme.

*The meaning of NRS 134.070 is clear and unambiguous under civil law of intestacy*

Our holding that NRS 134.070 requires a per capita without representation distribution scheme is also supported by the statute's plain language requiring distribution "to the next of kin in equal degree" when viewed in light of the civil intestacy laws, as explained by the Restatement (Third) of Property. This court has often relied on the Restatements to guide or supplement its analysis. *See, e.g., D.R. Horton, Inc. v. Eighth Jud. Dist.*

*Ct.*, 125 Nev. 449, 457, 215 P.3d 697, 703 (2009) (stating that the court's conclusion was supported by the Restatement (Third) of Property).

NRS 134.070 requires distribution "to the next of kin in equal degree." While the statute does not contain the terms "per capita without representation" or "per stirpes," the Restatement (Third) of Property explains that intestacy statutes indicating that a decedent's estate distribute to his "next of kin" or "nearest kindred" frequently add phrases like "in equal degree" or "without representation," or both. Restatement, *supra* § 2.4 cmt. j. When this happens, distribution is generally to the kindred lowest in degree and is nonrepresentational, or "per capita without representation." *Id.* This is because "[e]ach heir takes an equal share, because all the relatives who are entitled to participate in the estate will be in the same degree." *Id.* Almost without exception, cases that have considered statutory language similar to NRS 134.070 have held that the statutes required a nonrepresentational distribution. *See, e.g., In re Reil's Est.*, 211 P.2d 407, 410 (Idaho 1949); *Appeal of Hall*, 102 A. 977, 977 (Me. 1918); *Douglas v. Cameron*, 66 N.W. 430, 432-34 (Neb. 1896); *In re Breg's Est.*, 73 N.W. 511, 512-13 (Minn. 1897).

Because a statute requiring a per capita without representation distribution requires determining degrees of kinship, the next inquiry is how degrees of kindred must be computed. Nevada law requires that degrees of kindred be computed according to the rules of the civil law. NRS 134.150. The process for computing degrees of kinship in American law dates back to English judges' interpretations of the Statute of Distribution of 1670. Restatement, *supra* § 2.4 cmt. k. The civil law method for calculating degrees of kinship under the Statute of Distribution involved counting the number of generations (1) up from the decedent to the decedent's ancestor who was also an ancestor of the collateral relative, and

then (2) down from that ancestor to the collateral relative. *Id.* Under that computation, a first cousin would be a fourth-degree collateral relative, and a first cousin once removed would be a fifth-degree relative.[3] *See id.* The result here is clear: respondents, as kindred in a lower degree of relatedness, take the decedent's estate on a per capita without representation basis; Lipson takes nothing.

*Traditional principles of statutory interpretation support the conclusion that NRS 134.070 requires a per capita without representation distribution*

Finally, we dismiss the several theories Lipson advances suggesting that traditional principles of statutory interpretation and public policy support a per stirpes reading of NRS 134.070, as none are persuasive. Where principles of statutory construction are employed, this court may seek to interpret statutes in harmony with an overall statutory scheme, *Tough Turtle Turf, LLC v. Scott*, 139 Nev. 459, 462, 537 P.3d 883, 886 (2023), avoid nugatory renderings or constructions resulting in surplusage, *Speer v. State*, 116 Nev. 677, 679, 5 P.3d 1063, 1064 (2000), and infer that the omission of terms included in one part of a statutory scheme but absent from a similar statute was intentional, *Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021).

While it is true that courts may seek to interpret a statute in harmony with a relevant statutory scheme, harmony does not require sameness. As Lipson points out, the legislature provided per stirpes language in many adjacent sections of NRS Chapter 134 but did not do so in NRS 134.070. *See Smith*, 137 Nev. at 72, 481 P.3d at 1230. In fact,

---

[3]Counting up two generations from (1) parent of decedent to (2) grandparent of decedent, and then down two generations to (3) aunt/uncle of decedent to (4) cousin of decedent. For a first cousin once removed, count down once more to (5) child of cousin.

*McKay* has been a published opinion for over a century, and the legislature, despite having many opportunities to clarify that the statute requires a per stirpes distribution, has never done so. These facts suggest that the omission was intentional. *Cf. N. Nev. Ass'n of Injured Workers v. Nev. State Indus. Ins. Sys.*, 107 Nev. 108, 112, 807 P.2d 728, 730 (1991) ("The statutory language considered by this court in [an earlier opinion] has remained unchanged and thus it is presumed that the legislature approves of our interpretation of the provision."). Further, despite arguing that NRS 134.070 should be interpreted in harmony with other statutes to avoid rendering parts of the statute nugatory or mere surplusage, Lipson inadequately articulates which provisions of NRS 134.070 will be rendered nugatory or mere surplusage under a per capita reading of the statute.

Lipson also contends that reading NRS 134.070 under the per capita without representation paradigm would result in absurd or unreasonable results and would entitle respondents to an unjust windfall. A similar argument appears to have been raised and rejected in *McKay*. There, the court explained

> [m]uch has been said by counsel for appellant of the injustice of a rule that will deprive appellant of her inheritance. Even so, we cannot amend the statute. The policy, wisdom, or expediency of a law is within the exclusive theater of legislative action. It is a forbidden sphere for the judiciary, which courts cannot invade, even under pressure of constant importunity.

43 Nev. at 127, 184 P. at 309. We find this reasoning persuasive and conclude that Lipson's arguments as to the absurdity and unreasonableness of this conclusion are also without merit on these points.

Finally, Lipson asserts that public policy may guide the court's interpretation of NRS 134.070. Lipson references the Uniform Probate Code (UPC) and California Probate Code as evidence that the modern trend

10

is to provide for a per stirpes distribution. This argument is unpersuasive. The meaning of NRS 134.070 is clear, and because the weight of authority supports the per capita without representation reading of NRS 134.070, we see no reason to consult the UPC or California Probate Code.

## CONCLUSION

The district court was correct in relying on *McKay*, which requires that NRS 134.070 be interpreted as providing for a per capita without representation intestacy scheme. This conclusion is supported by reading the statutory language of NRS 134.070 in conjunction with the civil law of intestacy and by contemporary principles of statutory interpretation, which compel the same result. Accordingly, we affirm the district court's decision.

_____, J.
Lee

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A